WISCONSIN PROFESSIONAL POLICE
ASSOCIATION/LAW ENFORCEMENT
EMPLOYEE RELATIONS DIVISION,
Plaintiff-Respondent-Cross Appellant,†

v.

DANE COUNTY, Defendant-Appellant-Cross
Respondent.

Court of Appeals

*No. 88-0253. Submitted on briefs November 4, 1988.—Decided
March 23, 1989.*

(Also reported in 439 N.W.2d 625.)

---

† Petition to review denied.

---

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Judith H. Toole,* of Madison.

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Lee Cullen* and *Cullen, Weston, Pines & Bach,* of Madison.

Briefs of amicus curiae were filed by *Robert M. Hesslink, Jr.,* and *Hesslink Law Offices, S.C.,* on behalf of Sheriff Jerome Lacke.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J. Under the collective bargaining agreement between the county and the Wisconsin Professional Police Association, the association grieved ten interstate conveyances of prisoners between April 21, 1986 and October 6, 1986.[1] The association alleged

---

[1]Interstate conveyances may be necessary under sec. 976.01, Stats. (uniform act for the extradition of prisoners as witnesses), sec. 976.02 (uniform act for the extradition of witnesses in criminal actions), sec. 976.03 (uniform criminal extradition act), and sec.

that the sheriff and the county violated sec. 7.11 of the collective bargaining agreement by contracting for such conveyances with the U.S. Marshal's Service rather than assigning the work to bargaining unit personnel. The arbitrator agreed and ordered the sheriff and the county to cease the practice.

The association also alleged that the county violated sec. 19.01, the "Maintenance of Standards" clause of the agreement. The arbitrator concluded that sec. 19.01 did not apply. The association does not contest that conclusion.

We conclude that the arbitrator's award is illegal and void because it orders the county and the sheriff to comply with a provision of the collective bargaining agreement which, as applied, interferes with the sheriff's attendance upon the court, a duty inherent in the office of sheriff. The sheriff's execution of a court-issued arrest warrant to bring before the court a prisoner is attendance on the court, which cannot be limited by a collective bargaining agreement. *See Professional Police Ass'n v. Dane County,* 106 Wis. 2d 303, 305, 316 N.W.2d 656, 657 (1982) (*WPPA I*) (sheriff's "special relationship" with the courts may not be limited by a collective bargaining agreement). Because we analyze the nature of the sheriff's duty in light of the sheriff's constitutional powers, *id.* at 312, 316 N.W.2d at 660, not the way in which the sheriff carries out the duty, we reject the association's claim that, regardless of the nature of the sheriff's duty, the interstate conveyance of prisoners is not attendance upon the court. We also reject the association's claim that the agreement at issue may be enforced against the county

976.05 (agreement on detainers). It appears from the record and the briefs of the parties and of the sheriff that the grieved conveyances were made pursuant to the Uniform Criminal Extradition Act.

even if it infringes on the sheriff's constitutional powers. We reverse the trial court's order insofar as it confirmed the arbitrator's award. We affirm the order insofar as it vacated the award.

## I.

## BACKGROUND

The ten interstate conveyances were from relatively distant points: Arizona, California, Alabama, Kansas, Florida and Texas. "Unit personnel value such assignments since they provide a break from more routine duties, and on some occasions interstate conveyances may involve compensable overtime hours." (Arbitrator's award at 11.)

From 1980 the sheriff has assigned two deputies who are bargaining unit personnel to interstate conveyances. The assignments have been on a permanent basis and the officers are identified as transport officers. An interstate conveyance is normally assigned to one transport officer and a deputy from a reserve pool of "task force" deputies, who are also members of the bargaining unit.

The interstate conveyances grieved constituted approximately thirty percent of the interstate conveyances from April 21, 1986. The remaining conveyances were performed by bargaining unit personnel, occasionally assisted by supervisors. From 1982, bargaining unit personnel received ninety-one percent of the interstate conveyance assignments. In April 1986, the sheriff began to contract with the U.S. Marshal's Service for interstate conveyances, when the estimated non-labor cost to the county of using bargaining unit personnel exceeded the amount which would be charged by the Marshal's Service. The decision to use the Marshal's

Service was made on a case basis after supervisory personnel were satisfied that it was more economical to use the Marshal's Service than to use unit personnel.

"The sole purpose of utilizing the U.S. [Marshal's] Service for interstate conveyances of prisoners by air transportation is for the reason that such utilization results in the saving of money to the County, a fact acknowledged by the Association." (Arbitrator's award at 10.)

In each case, the sheriff prepared a purchase order and submitted the order to the appropriate county department for processing. The county purchasing agent was required to approve each contract. Payments to the Marshal's Service were made by check drawn upon the county treasury from funds allocated to the travel expense fund of the sheriff's department.

The arbitrator determined that the sheriff and the county had violated sec. 7.11 of the collective bargaining agreement by contracting with the U.S. Marshal's Service and paying the Service for the interstate conveyance of prisoners rather than assigning bargaining unit employees to such conveyances. The arbitrator ordered that the sheriff and the county "shall refrain from subcontracting the interstate conveyance of prisoners to the U.S. [Marshal's] Service, as well as to any other agency, party, or person when bargaining unit personnel are available to perform such bargaining unit work." The arbitrator fashioned a remedy to determine overtime.

The trial court confirmed the award as it applied to the county, but vacated the portion which applied to the sheriff because the sheriff was not a party to the contract. The court also confirmed the award as to the procedure for determining overtime.

## II.

## THE COLLECTIVE BARGAINING AGREEMENT

Section 7.11 of the collective bargaining agreement provides:

> The Employer agrees to employ sufficient employes to adequately man the various shifts and departments during times of vacation, sickness or other authorized absences from duty. Bargaining unit work, including that assigned on an overtime basis, shall only be performed by bargaining unit personnel unless after advance notice has been given of the opportunity to perform such work or other reasonable efforts made by the shift commander fail to provide bargaining unit personnel for such work assignments.

## III.

## STANDARD OF REVIEW

In *WPPA I,* the Wisconsin Supreme Court summarized the law governing review of arbitration awards. 106 Wis. 2d at 307–08, 316 N.W.2d at 658. In general, courts have adopted a "hands-off" attitude toward arbitrator's decisions. *Id.* A court will, however, vacate an award where the arbitrator exceeds his or her authority. "An arbitrator exceeds his [or her] authority in enforcing an illegal contract. Because a contract provision that violates the law is void, a dispute arising out of a violation of that provision is not arbitrable." *Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis. 2d 90, 98, 264 N.W.2d 594, 599 (1978) (citations omitted). We therefore review the award to determine whether the

arbitrator exceeded his authority by attempting to enforce an illegal contract.

## IV.

## DISCUSSION

The contentions on the county's appeal and the association's cross-appeal resolve themselves into three questions.[2] First, is the execution of a court-issued arrest warrant to bring a prisoner before the court attendance on the court? Second, if execution of a court-issued arrest warrant to bring a prisoner before the court is attendance on the court, may a collective bargaining agreement between the county and the association require that the sheriff use only bargaining unit members for the interstate transportation of such prisoners? Finally, may the arbitration award be enforced against the county even if the sheriff's constitutional duties and powers are thereby infringed upon?

### A.

### *Nature of Sheriff's Duty*

The sheriff is an officer of antiquity ... his name being derived from two Saxon words, *seyre,* that is, a shire or county, and *reve,* keeper, bailiff, or guardian.

W.H. Watson, *A Practical Treatise on the Law Relating to the Office and Duties of Sheriffs, reprinted in,* 5 *The Law Library* 1, 1 (1835).

---

[2]The sheriff filed nonparty briefs pursuant to our order. Sec. (Rule) 809.19(7), Stats.

> [T]he constitution nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff. But there can be no doubt that the framers of the constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted.

*State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 414 (1870). *Brunst* is confined to those "immemorial principal and important duties that characterized and distinguished the office" of sheriff at common law. *WPPA I,* 106 Wis. 2d at 311, 316 N.W.2d at 660 (quoting *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 482, 177 N.W. 781, 784 (1920)).

At common law, the duties of the sheriff were four fold. W.H. Watson, *supra,* at 2. He was the keeper of the king's peace within the county; he was the king's bailiff; he heard and determined certain causes of action in his judicial capacity; and finally, in his ministerial capacity, he executed all process issuing from the king's superior courts of justice. *Id.* "It is one of the many duties of the sheriff to attend sessions of particular courts. ... The responsibility of the sheriff is limited to the direction of the court. ... When the sheriff attends the court, he attends as an officer of the court. ... It is the duty of the sheriff to be present himself, or through a deputy and provide sufficient deputies to carry out the court's orders." 1 W. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables,* 320 (1941) (footnotes omitted). *See also* R.C. Sewell, *A Treatise on the Law of Sheriff, reprinted in,* 44 *The Law Library* 1, 30–31 (1845); Murfree, *A Treatise on the Law of Sheriff,* secs. 1160, 1167 and 1173 (1890); 70 Am. Jur. 2d, *Sheriffs, Police, and Constables* sec. 48 (1987).

W. Anderson, *supra,* at 36, states that,

The powers and duties of a sheriff as implied from the name and nature of his office are still the same today as they were at common law, except, insofar as it has been modified by constitutional and statutory provision. *He is still an officer of the court and subject to its orders and directions.* [Footnotes omitted, emphasis added.]

In *State v. Graham,* 203 N.W.2d 600, 603 (Iowa 1973), the court said:

Where ... an officer such as a sheriff or his deputy is, in his official capacity, engaged in the performance of his duties required of him by a court order, judgment or decree, civil or criminal, he is unquestionably a part of the judicial machinery and as such acting in an administrative capacity. [Citations omitted.]

"'Attendance on the Court' is [a] power[ ] inherent in the sheriff ...." *WPPA I,* 106 Wis. 2d at 313, 316 N.W.2d at 661.

These authorities establish that, at common law, the sheriff was an officer of the court and obliged to the court's commands. The sheriff remains today subject to the orders of the courts. We conclude that when the sheriff executes an arrest warrant issued by the court to bring a prisoner before the court the sheriff attends upon the court.

### B.

### *Effect of Extraterritorial Nature of Act*

The association argues that its grievances relate solely to the *interstate* transportation of prisoners and that such transportation does not involve attendance

upon the court. The association points out that at common law the sheriff, generally, could not act outside the sheriff's shire or county. *See, e.g.,* W.H. Watson, *supra,* at 3. The association contends that the legal authority for an interstate extradition is the governor's arrest warrant issued under the Uniform Criminal Extradition Act, sec. 976.03, Stats., and is not found in an "immemorial principal and important dut[y]" preserved to the sheriff by the Wisconsin Constitution.

Under the Uniform Criminal Extradition Act, sec. 976.03, Stats., the procedure is as follows: (1) A prosecutor files a criminal complaint, and a judge issues an arrest warrant. Sec. 968.04, Stats. (2) When the accused is found in the custody of another state, the district attorney files a written application for an arrest warrant from the governor, which must include the criminal complaint. Sec. 976.03(23)(a), (c), Stats. (3) The governor then issues an arrest warrant or requisition "*to some agent,* commanding him [or her] to receive the person so charged if delivered to him [or her] and convey him [or her] to the proper officer of the county in this state in which the offense was committed." Sec. 976.03(22), Stats. (Emphasis added.) The association correctly points out that the governor's agent need not be the sheriff. When the sheriff arrests and brings to Wisconsin a prisoner on a warrant issued by the governor, the sheriff acts as the agent of the governor. 5 Op. Att'y Gen. 817, 818 (1916). The association argues that, therefore, in the interstate transportation of prisoners, the sheriff is not performing an immemorial principal and important duty which characterized and distinguished the office of sheriff at common law.

The association's argument fails for several reasons. First, from time immemorial, the sheriff has been

the arm of the king or the sovereign. Therefore, the fact that the sheriff acts as agent of the governor and the state in the interstate transportation of prisoners does not deter us from the conclusion we have already expressed. Further, although the sheriff, in providing for the interstate transportation of prisoners may act as the agent of the governor, it is the courts who are being served, not the governor. When it becomes necessary to call upon the governor to issue an extradition warrant, the reason has nothing to do with the workings of the court which issued the arrest warrant but has to do with the sovereign nature of the state in which the fugitive is harbored. The governors of the states act only to obtain jurisdiction over an unwilling prisoner.

Second, it is the court's warrant which initiates the process by which a prisoner is ultimately returned to face trial. When the court issues its warrant, it may not know the whereabouts of the accused. If the accused is located within the state, it will be unnecessary to call on the governor for an extradition warrant. It would be truly anomalous to hold that if the prisoner is found within the county or state, the execution of the court's warrant to produce the prisoner is attendance upon the court but if it is necessary to go beyond the state's borders to seize the prisoner, the sheriff is no longer attending upon the court but upon the governor.

Third, it is traditional in Wisconsin that the sheriff act as the agent of the governor in extraditing prisoners. In 34 Op. Att'y Gen. 44 (1945), the attorney general opined that if constables or city police officers were to be sent outside the state to return a fugitive who had waived jurisdiction for trial on an offense occurring in the municipality's jurisdiction "they should be sworn in as deputy sheriffs...." *Id.* at 47. An association witness testified that, except where the Marshal's

Service is used, in all cases where Dane county is the receiving jurisdiction, sheriff's deputies and employees do the transporting of prisoners.

Finally, *WPPA I* instructs us that, "It is the nature of the job ... which must be analyzed in light of the sheriff's constitutional powers." *WPPA I,* 106 Wis. 2d at 312, 316 N.W.2d at 660. If the duty is one of those immemorial principal and important duties that characterized and distinguished the office of sheriff at common law, the sheriff "chooses his own ways and means of performing it." *Id.* at 314, 316 N.W.2d at 661 (quoting *Andreski v. Industrial Comm.,* 261 Wis. 234, 240, 52 N.W.2d 135, 137 (1952)). Therefore, we analyze the execution of court-issued arrest warrants according to the nature of the task and not according to the ways and means selected by the sheriff to perform the task.

## C.

### *Application of Award Against County Only*

The association argues that it is not necessary to reach the question of whether the execution of a court-issued arrest warrant is attendance upon the court. It contends that the county may be restrained from approving purchase orders for the U.S. Marshal's Service, and from approving and paying the Marshal's vouchers. We disagree for several reasons. First, it would be destructive of government itself if a public governing body, through the exercise of its budgetary and fiscal controls, could render impossible the performance of the duties which devolve upon a constitutional officer because of the officer's constitutional status. This principle was recognized in *Schultz v. Milwaukee County,* 250 Wis. 18, 26 N.W.2d 260 (1947), where the court concluded that the county board could not set the

salary of the coroner so low that it would amount to a *de facto* abolishment of the office.

In 35 Op Att'y Gen. 474, 475 (1946), the attorney general opined that *Schultz* and *Brunst* "can ... be considered as negativing any implied power on the part of the county board to effect any change in the substance of the sheriff's constitutional powers while preserving to him the shadow of such powers but without the manpower or appropriation necessary to carry the same into effect."

The attorney general has also opined that a county may not intrude upon the powers and duties conferred upon constitutional officers through the exercise of its organizational and administrative powers. Op. Att'y Gen. No. 25–88 (May 23, 1988). The attorney general said that the county could not exercise its budgetary authority so unreasonably and arbitrarily as to effectively frustrate the constitutional powers and duties of such officers. *Id.*

Second, the effect of tying the county's purse strings would be to force the sheriff to bow to the county's dictate as to how the sheriff would perform a duty reserved to the office by the Wisconsin constitution. *WPPA I* has prescribed the only circumstances in which the sheriff may be bound by a collective bargaining contract negotiated by the county. The *WPPA I* court held: "If the functions of the court officer are not reserved to the sheriff by the constitution, then the sheriff may be bound by the collective bargaining agreement entered into between the county and the union by virtue of the Municipal Employment Relations Act (MERA), secs. 111.70–77, Stats. 1979–80." 106 Wis. 2d at 315, 316 N.W.2d at 662 (footnote omitted). The court also said, however, that, "the county board may not bind the sheriff to a collective

bargaining provision which explicitly contradicts his constitutional or statutory powers and duties ....” *Id.* at 317, 316 N.W.2d at 663, and, “[w]hile MERA permits a collective bargaining agreement to limit the sheriff’s statutory powers to the extent set forth in *Glendale,* it provides no basis for so limiting the powers and duties of the sheriff which are based upon his constitutional status.” *WPPA I,* 106 Wis. 2d at 319, 316 N.W.2d at 663. The county board may not accomplish indirectly what it cannot accomplish directly.

## V.

## DECISION

We conclude that the power and duty of the sheriff to execute court-issued arrest warrants to bring before the court a prisoner is attendance upon the court which may not be limited by a collective bargaining agreement. Section 7.11 of the collective bargaining agreement between the county and the association, as construed and applied by the arbitrator, impermissibly limits the sheriff’s exercise of this power and duty, and is void. The arbitrator therefore exceeded his authority in making the arbitration award. We reverse the trial court’s order insofar as it confirmed the arbitrator’s award.

*By the Court.*—Order affirmed in part and reversed in part.