SACRED HEART SCHOOL BOARD and Sister Hilda Hersant, Petitioners-Appellants,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Marilyn Sullivan, Respondents.

Court of Appeals

*No. 89-1906. Submitted on briefs May 2, 1990.—Decided August 8, 1990.*

(Also reported in 460 N.W.2d 430.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Bruce B. Deadman* of *Everson, Whitney, Everson & Brehm, S.C.,* of Green Bay.

On behalf of the respondents, the cause was submitted on the briefs of *Kenan J. Kersten* and *Leslie Van Buskirk* of *Kersten & McKinnon, S.C.,* of Milwaukee and *Donald J. Hanaway,* attorney general, and *David C. Rice,* assistant attorney general.

Before Nettesheim P.J., Brown and Scott, JJ.

BROWN, J. Sacred Heart School Board and its school principal both appeal an order affirming the Labor and Industry Review Commission's (LIRC) decision that the Equal Rights Division (ERD) does not violate the first amendment by conducting a hearing on the age discrimination complaint of a teacher in a religious elementary school. Because we hold that the ERD violated no constitutional rights when determining whether a religious-based reason was in fact the reason for discharge, we affirm.

Marilyn Sullivan was a lay teacher at Sacred Heart School for sixteen years. The school board decided that Sullivan's contract to teach third grade should not be renewed for the 1986–87 school year. The board based its decision on a negative teaching evaluation of Sullivan prepared by Sister Hilda Hersant, the school principal. At the time of her discharge, Sullivan was 56 years old.

Sullivan filed an age discrimination complaint against the board and the principal (collectively "the school") with the ERD of the Department of Industry, Labor and Human Relations (DILHR). The school denied that age was the reason for non-renewal of the contract and cited problems with Sullivan's classroom management, her professionalism, and her maintenance of a prayerful environment.

An ERD investigator concluded there was probable cause to believe age discrimination existed in Sullivan's case. ERD's conclusion was based on findings that the

principal gave Sullivan an excellent teaching evaluation the year before her dismissal, and that the school had systematically terminated the contracts of three out of four teachers who had many years of teaching experience at the school and were thus at the top of their pay scale.

The case was set for a hearing. The school then claimed that a hearing would violate the free exercise clause of the First Amendment to the United States Constitution, as well as art. I, sec. 18 of the Wisconsin Constitution. The administrative law judge (ALJ) agreed with the school and dismissed the case. Sullivan appealed to LIRC, which reversed the ALJ. The school then appealed to the circuit court which affirmed the decision of LIRC.

When considering a ruling of an administrative agency, the appeals court generally reviews questions of law *ab initio*. *Lewandowski v. State,* 140 Wis. 2d 405, 409, 411 N.W.2d 146, 148 (Ct. App. 1987). Since this case involves only questions of constitutional law, it may be decided by this court without deference to the trial court or the administrative agency.

LIRC and the trial court based their decisions on *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619 (1986). In *Dayton,* the United States Supreme Court concluded that "the Commission violates no constitutional rights by merely investigating the circumstances of [the employee's] discharge in this case, if only to ascertain whether the ascribed religious-based reason was in fact the reason for the discharge." *Id.* at 628. The trial court held that *Dayton* permitted the ERD to continue its investigation of Sullivan's complaint to determine whether the school gave religious-based reasons for Sullivan's discharge simply as a pretext to cover age discrimination. We agree.

The school argues that the cited language from *Dayton* is only dictum. We disagree. Moreover, the result is the same whether the language is dictum or not. Under *Dayton,* the state agency charged with enforcing the state's employment laws can investigate discrimination complaints against a religious institution without violating the first amendment.

The school asks that we rely on a more recent case, *Corporation of the Presiding Bishop v. Amos,* 483 U.S. 327 (1987), where the Supreme Court upheld the right of a church-owned gymnasium to discharge a building engineer who did not have a certificate showing he was a member of the Mormon church. However, *Amos* involved no allegation of pretext as in Sullivan's case. Rather, both the complainant and the employer in *Amos* agreed that the reason for discharge was religious. In that respect, *Amos* is like *Black v. St. Bernadette Congregation,* 121 Wis. 2d 560, 565, 360 N.W.2d 550, 553 (Ct. App. 1984), where the trial court determined that the only reasons for the employee's discharge were ecclesiastical.

Additionally, in Sullivan's case there is no objective measure of the employer's religious requirement, such as the church membership certificate in *Amos,* to which the court could defer. Instead, there is the principal's subjective judgment that Sullivan did not maintain a prayerful environment in the classroom. If there were an objective measure, there would be no need to investigate for pretext.

The Supreme Court has held that the first amendment permits courts to apply "neutral principles of law" to disputes involving religious entities, rather than requiring deference to church authorities. *See Jones v. Wolf,* 443 U.S. 595, 602 (1979). The neutral principle of

law in this case is Wisconsin's Fair Employment Law, secs. 111.31–111.395, Stats., which has no blanket exemption for religious employers. Religious employers have a very limited exemption that allows them to give preference in employment to members of their own religion. Sec. 111.337(2), Stats. However, the exemption does not permit religious employers to practice prohibited forms of discrimination. Sec. 111.337. Thus, the ERD has an obligation to determine whether even religious employers have practiced discrimination.

The school argues that permitting the ERD to investigate for pretext will have a chilling effect on its religious freedom. However, the ERD investigation of Sullivan's complaint will not lead to the entanglement between church and state that the United States Supreme Court found impermissible in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 503–04 (1979). *Catholic Bishop* involved collective bargaining in a seminary. Collective bargaining and NLRB supervision involve ongoing state scrutiny of employer/employee relations. State regulation of employment discrimination, by contrast, involves only sporadic investigation of employee complaints. The intrusion is minimal and is not an attempt to interfere with religious schools.

Moreover, the school is still free to discharge employees for religious reasons. The school will prevail in the ERD investigation if Sullivan cannot prove that the religious-based reason given for her discharge was only a pretext for age discrimination. The burden of proof remains with the complainant.

The school also argues that the free exercise clause of the first amendment gives religious groups a constitutional right to autonomy and requires courts to defer to decisions of the religious group, even at the expense of

the individual. We disagree. The free exercise clause guarantees religious rights to every citizen and not merely to religious institutions or their officers. *See* U.S. Const. amend. I. We would be limiting the free exercise rights of individuals if we interpreted the free exercise clause as giving religious groups a right to autonomy that exempted them from judicial scrutiny. The United States Supreme Court has recognized the right of the state to place limitations on religious liberty when it is essential to accomplish an overriding governmental interest. *United States v. Lee,* 455 U.S. 252, 257 (1982). The state has an overriding interest in regulating even religious institutions so that the free exercise rights of all citizens can be balanced and thus safeguarded. If we accepted the school's autonomy argument, the court would be awarding the religious employer a talisman to protect it from all discrimination lawsuits. This we cannot allow.

Because we determine that *Dayton* controls, and because we have found no precedent which persuades us that an ERD hearing of a discrimination complaint is unconstitutional, we hold that the ERD does not violate the free exercise clause of the First Amendment of the United States Constitution or art. I, sec. 18 of the Wisconsin Constitution by conducting an investigation of a discrimination complaint brought by an employee of a religious school.

*By the Court.*—Order affirmed.