Washington County and Robert Schulteis, Washington County Sheriff, Plaintiffs-Appellants,

v.

Washington County Deputy Sheriff's Association, Defendant-Respondent.

Court of Appeals

*No. 94–1525. Submitted on briefs February 15, 1995.—Decided March 29, 1995.*

(Also reported in 531 N.W.2d 468.)

729

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William E. Callahan, Jr., Roger E. Walsh*, and *James M. Jorissen* of *Davis & Kuelthau, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Linda S. Vanden Heuvel* of *Vanden Heuvel & Dineen, S.C.* of Slinger.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. The issue presented on appeal is whether the constitutional powers of the office of sheriff include the right to utilize nonbargaining unit law enforcement personnel from other municipalities to help maintain law and order and preserve the peace in anticipation of a public event expected to draw thousands of people to a county-wide area. We conclude that such authority is within the sheriff's powers. We therefore reverse the circuit court's declaratory ruling at summary judgment to the contrary. We remand with directions that the court enter summary judgment in favor of Washington County and Sheriff Robert Schulteis.

## BACKGROUND

The underlying facts are not in dispute. On the weekend of June 11-13, 1993, Harley Davidson Company sponsored "Harleyfest 1993," a gathering for motorcycle enthusiasts, to celebrate the company's ninetieth anniversary. The event was expected to draw thousands of people to southeastern Wisconsin.

On April 30, 1993, Waukesha County Sheriff Arnold Moncada extended an invitation to Schulteis to attend a meeting on May 7 regarding a proposed mutual aid program with Waukesha County in anticipation of Harleyfest.

Schulteis had been advised that as a result of Harleyfest, all of the motels in Washington County had been reserved and that a substantial number of reservations had been made at various campgrounds in the county, leading him to conclude that mutual aid would be more necessary in Washington County than in Waukesha County. On May 13, Schulteis attended a meeting of the Washington County Law Enforcement Council with representatives from the police departments of municipalities in Washington County to discuss mutual aid among them. Subsequently, Schulteis sent letters to the police departments in Germantown, Hartford, Jackson, Kewaskum and Slinger requesting an officer from their police departments to work with the Washington County Sheriff's Department during the Harleyfest weekend.

Schulteis's plan called for two extra patrol units, with Washington County providing two squad cars staffed with a Washington County deputy and an officer from one of the other municipalities' departments in each car. Guidelines were drafted to govern how these special units would be utilized during Harleyfest. For example, the special units were not to respond to routine calls, but only to disturbance calls, and these units would also be the first to travel outside Washington County in the event that another county or municipality called for assistance.

Schulteis decided that it was best to keep the Washington County deputy sheriffs in reserve and available for back-up within Washington County

should an incident occur which called for additional assistance. He determined that the deputies, unlike the local police officers, would be more familiar with all areas and roads of the county and that the deputies would be able to respond faster and thus provide better protection.

An agreement entitled the "Washington County Law Enforcement Mutual Aid Contract" was prepared for seven municipalities within Washington County to sign along with the sheriff's department. Ultimately, the contract was signed by only one municipality. The others did not sign because their city attorneys had advised them that mutual aid was already statutorily prescribed by §§ 59.24(2) and 66.305, STATS.[1]

Brad Thompson, a Washington County deputy sheriff, requested to work overtime during Harleyfest and to perform the task assigned to the municipal police officers as part of the special unit. When the request was denied, Thompson filed a grievance with the Washington County Deputy Sheriff's Association alleging that Schulteis's use of law enforcement personnel from outside the collective bargaining unit

---

[1] Section 59.24, STATS., provides in part: **"Peace maintenance; powers and duties of peace officers, cooperation.** . . . (2)** County law enforcement agencies may request the assistance of law enforcement personnel or assist other law enforcement agencies as provided in ss. 66.305 and 66.315."

Section 66.305, STATS., provides in part: **"Law enforcement; mutual assistance. (1)** Upon the request of any law enforcement agency, including county law enforcement agencies as provided in s. 59.24(2), the law enforcement personnel of any other law enforcement agency may assist the requesting agency within the latter's jurisdiction, notwithstanding any other jurisdictional provision."

violated § 19.05 of the collective bargaining agreement between Washington County and the association.

Thompson's grievance was denied by the sheriff's department and by the personnel committee of the Washington County Board. The association then sought to submit the grievance to arbitration, and on October 15, 1993, the Wisconsin Employment Relations Commission presented a list of potential arbitrators to the association and the County.

On November 10, 1993, Washington County and Schulteis (the County) filed an action in circuit court seeking a declaratory judgment that § 19.05 of the collective bargaining agreement violated the Wisconsin Constitution and was illegal, unenforceable and void on its face or, in the alternative, as applied to the facts of this case. The complaint also sought an order permanently enjoining the arbitration on the ground that since § 19.05 was illegal, the arbitrator would have no jurisdiction. In its answer, the association argued that the court lacked subject matter jurisdiction because the complaint was premature since arbitration of the grievance had not yet occurred and asked that the complaint be dismissed for failure to state a claim.

Thereafter, the County filed a motion for summary judgment. The association opposed the motion, arguing that the issue of whether a mutual aid program had been put into effect was a remaining material issue of fact which precluded summary judgment.

On May 2, 1994, the trial court ruled that it had jurisdiction to hear the matter and that the matter did not have to proceed to arbitration before the court could review the case. The trial court denied the County's motion for summary judgment and instead granted judgment in favor of the association, treating its motion to dismiss as one for summary judgment pursu-

ant to § 802.06(2), STATS. The court concluded that there was no mutual aid program in effect during Harleyfest and that Schulteis's constitutional powers as sheriff did not permit him to disregard the collective bargaining agreement and use personnel outside of the bargaining unit to staff the special units. The County appeals.

## DISCUSSION

### 1. Standard of Review

We review a motion for summary judgment de novo, using the same methodology as the trial court. *See IBM Credit Corp. v. Village of Allouez,* 188 Wis. 2d 143, 149, 524 N.W.2d 132, 134 (1994). Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* § 802.08(2), STATS. Whether the sheriff is limited by § 19.05 of the collective bargaining agreement from assigning non-bargaining unit officers to temporarily perform the duties of deputy sheriff presents a constitutional question. Our review of a constitutional question is independent. *See Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993).

### 2. Analysis

Section 19.05 of the collective bargaining agreement between the County and the association for the period from January 1, 1992, to December 31, 1993, provides:

All bargaining unit work shall be performed by civil service employees in the classified service of the WCSD except as provided in Sections 19.04 and 19.06.[2]

All non-bargaining unit work assignments shall first be offered to bargaining unit employees, provided that if bargaining unit employees perform such assignments, they shall do so at the rate of pay then in effect as established by the County. It is agreed that the following assignments are non-bargaining unit work:

 a. Dance hall supervision.
 b. Picnics, fairs, exhibitions and shows.
 c. Construction flagman and private parking attendant and race track.

On appeal, the County argues that the office of sheriff grants broad latitude to perform duties traditionally belonging to the sheriff at common law. The County contends that Schulteis's assignment of municipal police officers to patrol duty was constitutionally protected and, therefore, could not be interfered with by the collective bargaining agreement. The association maintains that Schulteis's action was a "mundane and commonplace" power of appointment which was subject to the terms of the collective bargaining agreement.

---

[2] Section 19.04 of the collective bargaining agreement permits the use of civil service employees without regard to seniority and classification when there is a temporary assignment arising out of an individual deputy's authorized leave. Section 19.06 of the agreement permits the use of noncivil service deputies to transport prisoners to or from the county jail.

We begin with a brief overview of the office of sheriff. The position of sheriff is provided for in Article VI, Section 4 of the Wisconsin Constitution.[3] Although the sheriff's powers are not delineated in the constitution, the Wisconsin Supreme Court long ago set forth its interpretation of the scope of the sheriff's constitutional powers in *State ex rel. Kennedy v. Brunst*, 26 Wis. 412 (1870), and *State ex rel. Milwaukee County v. Buech*, 171 Wis. 474, 177 N.W. 781 (1920), and they all need not be repeated here.[4] *See Wisconsin Professional Police Ass'n v. Dane County*, 106 Wis. 2d 303, 310-12, 316 N.W.2d 656, 659-60 (1982) (*WPPA I*). In determining whether Schulteis acted within the scope of his powers, "It is the nature of the job . . . which must be analyzed in light of the sheriff's constitutional powers." *See Wisconsin Professional Police Ass'n v. Dane County*, 149 Wis. 2d 699, 710, 439 N.W.2d 625, 629 (Ct. App. 1989) (*WPPA II*) (quoted source omitted). If the duty is one of those immemorial principal and important duties that characterized and distinguished the office of sheriff at common law, the sheriff chooses the ways and means of performing it. *Id.*

We regard the Wisconsin Supreme Court's decision in *Manitowoc County v. Local 986B*, 168 Wis. 2d 819, 484 N.W.2d 534 (1992) (*Local 986B II*) (per curiam by 4-3 decision), as controlling on the question before us. There, the sheriff had appointed a deputy to the temporary position of undercover detective, contrary to the posting provisions of the collective bargaining

---

[3] Article VI, Section 4 of the Wisconsin Constitution provides in part: "Sheriffs . . . shall be chosen by the electors of the respective counties once in every 2 years."

[4] The statutory duties of the county sheriff are delineated in § 59.23, STATS.

agreement. *Id.* at 821-22, 484 N.W.2d at 534-35. This court had held that the appointment violated a collective bargaining agreement because such authority was not unique to the office of sheriff at common law and did not give character and distinction to the office. *Manitowoc County v. Local 986B*, 163 Wis. 2d 911, 917, 472 N.W.2d 600, 602 (Ct. App. 1991) (*Local 986B I*), *rev'd*, 168 Wis. 2d 819, 484 N.W.2d 534 (1992). We stated, "We find no evidence that investigation of crime was unique to the sheriff's office at common law." *Id.* at 919, 472 N.W.2d at 603.

The supreme court, in a per curiam opinion with three justices dissenting, disagreed with our holding. The court observed that the constitutional duties of the sheriff are those which flow from the sheriff's "generally recognized legal duties at common law, and not their uniqueness to the office of sheriff." *Local 986B II*, 168 Wis. 2d at 825, 484 N.W.2d at 536 (quoted source omitted). Applying this principle, the court said, "Undercover detective work implicates both law enforcement and peace-preserving functions of a sheriff." *Id.* at 829, 484 N.W.2d at 538.

The supreme court was not deterred by our concern in *Local 986B I*, echoed by the association in this case, that "[i]f enforcing the law and preserving the peace were constitutional prerogatives, then there would be no duty of the sheriff that is not constitutional." *Local 986B I*, 163 Wis. 2d at 918, 472 N.W.2d at 602. The supreme court labeled that concern "hyperbolic," noting that the legislature could "still regulate the administrative and executive duties of a sheriff, and the collective bargaining agreement will still control wages, hours and conditions of employment." *Local 986B II*, 168 Wis. 2d at 831, 484 N.W.2d at 539.

■ We obviously are bound by prior decisions of our supreme court. If the assignment of a deputy sheriff to generically investigate crime in an undercover capacity is embraced by the sheriff's historical duties of maintaining law and order and preserving the peace, *id.* at 830, 484 N.W.2d at 538, then so also must be the precautionary law enforcement measures taken here which were specifically aimed at preserving the peace during Harleyfest.

The association, however, points to the supreme court's other language in *Local 986B II* stating that while the sheriff had the power to appoint deputies, such was not a power that gave character and distinction to the office. *Id.* at 826-27, 484 N.W.2d at 536-37. We conclude that the association's argument is misplaced for two reasons.

First, this is not a case where the sheriff has appointed any deputies. The summary judgment record does not establish that the municipal officers were officially deputized. Rather, the sheriff requested and received the voluntary cooperation of the municipal officers and then utilized them to assist the Washington County deputies. This is akin to *WPPA II,* where the sheriff contracted with the U.S. Marshal's Service for the interstate conveyance of prisoners rather than assigning the work to bargaining unit personnel. *WPPA II,* 149 Wis. 2d at 701-03, 439 N.W.2d at 625-26. The court of appeals held that the collective bargaining agreement could not limit the sheriff's exercise of his constitutional powers. *Id.* at 712, 439 N.W.2d at 630. The sheriff chooses his or her own ways and

means of performing those duties. *See id.* at 710, 439 N.W.2d at 629.[5]

Second, as we have already stated, the supreme court has held that law enforcement and preserving the peace are duties that gave character and distinction to the office of sheriff at common law. *Local 986B II*, 168 Wis. 2d at 828, 484 N.W.2d at 537. The sheriff's common law authority has been described as follows:

> In the exercise of executive and administrative functions, in conserving the public peace, in vindicating the law, and in preserving the rights of the government, he (the sheriff) represents the sovereignty of the State and *he has no superior in his county.*

*Id.* at 827, 484 N.W.2d at 537 (quoted source omitted). Therefore, the proper inquiry in this case is whether the nature of the job assigned to the municipal officers was for the purpose of law enforcement and preserving the peace. *See id.* at 829, 484 N.W.2d at 538. If so, Schulteis's actions were constitutionally protected and the collective bargaining agreement could not limit his authority to choose the ways and means of preserving the peace. *See WPPA II,* 149 Wis. 2d at 710, 439 N.W.2d at 629.

As we have already stated, the supreme court's opinion in *Local 986B II* compels the conclusion in this

---

[5] *Wisconsin Professional Police Ass'n v. Dane County,* 149 Wis. 2d 699, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*), also disposes of the association's argument that this case is not governed by existing law because the sheriff used nonbargaining unit personnel. In *WPPA II,* the sheriff contracted with the U.S. Marshal's Service to use nonbargaining unit personnel to perform duties historically assigned to the sheriff. *Id.* at 701-03, 709, 439 N.W.2d at 625-26, 629.

case that the special precautions taken by Schulteis qualified as law enforcement and preserving the peace. The duty of the special units was to "respond to and stabilize" emergency situations. The area of patrol was to be the southern region of Washington County and the Lazy Days Campground. Schulteis testified that the purpose of assigning these special patrol units was to have them available to go outside the county to respond to emergency situations, leaving off-duty Washington County deputies available for back-up in the event of an emergency related to the large number of people within Washington County for Harleyfest. Schulteis explained that the deputies were more familiar with the roads throughout the entire county, in contrast to the municipal officers who may have been familiar with only their own municipalities.

The issue is not governed by the fact that no actual emergency situation arose during Harleyfest which would have put Schulteis's plan in action, as the association seems to intimate. Rather, the issue is whether the nature of the tasks to which the municipal officers were assigned qualifies under the sheriff's constitutional powers. *See WPPA II*, 149 Wis. 2d at 710, 439 N.W.2d at 629. To preserve the peace, Schulteis established a plan which kept in reserve, and thus available, many Washington County deputies in the event of an emergency during Harlyfest.[6] Law enforcement and

---

[6] We disagree with the association's argument that the nature of the municipal officers' duties was not demonstrated and that this case must be sent back to the trial court for further fact-finding. The association relies on *Wisconsin Professional Police Ass'n v. Dane County,* 106 Wis. 2d 303, 316 N.W.2d 656 (1982) *(WPPA I),* to support its contention that Schulteis's testimony is silent on the duties the municipal officers performed

preserving the peace are duties that gave character and distinction to the office of sheriff at common law, and Schulteis's actions relating to those duties are constitutionally protected.[7] *See Local 986B II,* 168 Wis. 2d at 828, 484 N.W.2d at 537.

## CONCLUSION

We conclude that Schulteis's assignment of municipal officers to patrol duty normally assigned to deputies was in the reasonable anticipation of a possible emergency situation during Harleyfest and, in this case, was a proper exercise of a sheriff's duty to preserve the peace that could not be limited by § 19.05 of the collective bargaining agreement. We therefore reverse the trial court's grant of summary judgment to the association. On remand, we direct the entry of summary judgment in favor of the County and Shulteis.

and that the record before this court does not explain the duties assigned to the municipal officers. This case is distinguishable from *WPPA I,* where the supreme court remanded the case to the trial court to define the duties performed by the "court officer" before it determined whether the sheriff's selection of a person outside the union was appropriate in light of the collective bargaining agreement. *Id.* at 305, 316 N.W.2d at 656-57. We hold that in this case, the record sufficiently describes the nature of the municipal officers' jobs during Harleyfest.

[7] Given our conclusion that Schulteis was properly exercising his constitutional authority relating to law enforcement and preserving the peace, we need not address the effect, if any, of additional authority which he may have under a mutual aid pact or under the mutual aid assistance provisions of § 59.24 or § 66.305, STATS.

*By the Court.*—Order reversed and cause remanded with directions.