DUNN COUNTY,
Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Respondent,

DUNN COUNTY JOINT COUNCIL OF UNIONS, AFSCME,
Respondent.

Court of Appeals

*No. 2005AP1917. Submitted on briefs January 17, 2006.
—Decided May 2, 2006.*

2006 WI App 120

(Also reported in 718 N.W.2d 138.)

640

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James R. Scott* and *Alan M. Levy* of *Lindner & Marsack, S.C.* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *David C. Rice*, assistant attorney general.

On behalf of the respondent, the cause was submitted on the brief of *Bruce F. Ehlke* of *Hawks, Quindel, Ehlke & Perry, S.C.* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Dunn County appeals a judgment affirming a Wisconsin Employment Relations

Commission determination that certain proposed provisions of a collective bargaining agreement are mandatory subjects of bargaining. The County asserts the disputed provisions impermissibly restrict the county sheriff's constitutionally protected prerogatives. With the exception of one, we determine the disputed provisions on their face do not intrude upon the sphere of the sheriff's duties. Accordingly, we affirm in part and reverse in part.

## Background

¶ 2. The Dunn County Joint Council of Unions, AFSCME (the Union), is the collective bargaining representative for two units of employees in the county sheriff's department. These employees include sworn deputies, jail staff, and communications and secretarial personnel. The last collective bargaining agreement between the Union and the County expired December 31, 2003.

¶ 3. The expired agreement contained several provisions the Union wanted to include in the new agreement. The County refused. These provisions, as identified in WERC's decision, are as follows:

a. Article 7, Section 7, which states, *inter alia*, "No one outside of the bargaining unit, or supervisors, shall perform work normally done by those employees within the bargaining unit, except in case of emergency."

b. Article A-14, Section 1(a), which states, *inter alia*, "Departmental Overtime work shall be offered to bargaining unit employees first, then to other qualified employees within the department before offering it to casual employees."

c. Article A-14, Section 3, which states, *inter alia,* "Emergency call in assignments shall first be offered to bargaining unit employees before assigning the same to temporary employees."

d. Article G-2m, Section 9, which states, *inter alia,* "The Court Security Officer shall be a sworn limited deputy with powers limited to the Judicial Center. Direct supervision shall be delegated by the Sheriff to the Clerk of Courts who will have priority over the Sheriff in the scheduling, directing and supervision of these employees."

e. Article G-3, Section 9, which states, *inter alia,* "In the event that Replacement Limited Term Employees are needed in the Jail or Patrol bargaining units, these LTEs may be drawn from reserves. They will only work the schedule of the person they replace and only one LTE will replace one employee . . . . Overtime will be offered to bargaining unit members before LTEs and bargaining unit members may, with the mutual agreement of the Sheriff, switch shifts with the Limited Term position."

f. Article G-3, Section 10, which specifies the duties that the County may assign to Reserve Officers, including providing security for various non-County events at non-County cost, and also states, *inter alia,* "the practice of assigning or allowing Reserves to patrol on Friday and Saturday nights, by themselves, in a County vehicle will cease," "Qualified Union employees will be given first opportunity to perform work offered to the department . . .," and "The County shall not contract with the Reserves or non-Union personnel for any purpose not stated herein without prior mutual agreement of the Union."

¶ 4. Because the County disputed whether it was required to bargain over these provisions, it filed a petition for a declaratory ruling with WERC pursuant

to Wis. Stat. § 111.70(4)(b).[1] The County asserted these provisions were prohibited subjects of bargaining because they interfered with the sheriff's discretion in fulfilling constitutionally protected obligations. The County and the Union stipulated to the facts in lieu of a hearing.

¶ 5. WERC concluded the contested provisions "primarily related to wages, hours and conditions of employment" and therefore ruled they were mandatory subjects of bargaining under Wis. Stat. § 111.70(1)(a).[2] WERC further determined the provisions "can be interpreted in a manner that does not intrude upon the sheriff's constitutional prerogatives" and hence "that they are not unlawful on their face."

¶ 6. The County then filed a petition for review with the circuit court. The court phrased the question as whether the sheriff's duty to assign department work was a protected power. Concluding this duty "appears to be general and administrative in nature and not one which 'characterizes and distinguishes' the office of sheriff . . . [and] is not peculiar to the office of sheriff,"

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Wisconsin Stat. § 111.70(1)(a) explains in part that:

"Collective bargaining" means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representative of its municipal employees in a collective bargaining unit, to meet and confer at reasonable times, in good faith, with the intention of reaching an agreement, or to resolve questions arising under such an agreement, with respect to wages, hours and conditions of employment . . . . The municipal employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the municipal employees in a collective bargaining unit.

the court affirmed WERC's decision. The court also concluded the provisions related to "wages, hours and conditions of employment" and accordingly were mandatory subjects of bargaining.

## Standard of Review

¶ 7. In collective bargaining cases, we review WERC's decision, not the circuit court's. *Crawford Cty. v. WERC*, 177 Wis. 2d 66, 69, 501 N.W.2d 836 (Ct. App. 1993). Ordinarily, we would give WERC great weight deference. *See City of Janesville v. WERC*, 193 Wis. 2d 492, 499, 535 N.W.2d 34 (Ct. App. 1995). However, we need not defer on legal questions, particularly those of constitutional magnitude. *Id.*; *Sacred Heart Sch. Bd. v. LIRC*, 157 Wis. 2d 638, 641, 460 N.W.2d 430 (Ct. App. 1990).

## Discussion

¶ 8. The Municipal Employment Relations Act establishes that municipal employers have a duty to bargain collectively with employees and then abide by any agreement reached. *City of Janesville*, 193 Wis. 2d at 499. There are three categories of collective bargaining subjects: (1) mandatory subjects, which are those "primarily related to wages, hours and conditions of employment"; (2) permissive subjects, which are primarily related to management and direction of the governmental entity and over which the employer may, but need not, bargain; and (3) prohibited subjects, which are those that would violate the law. *Id.* at 499–500.

¶ 9. Under the Wisconsin constitution, the sheriff has certain powers and prerogatives derived from the

common law; these powers cannot be limited by collective bargaining agreements. *See Heitkemper v. Wirsing,* 194 Wis. 2d 182, 188, 533 N.W.2d 770 (1995); *Wisconsin Prof. Police Ass'n v. Dane Cty.,* 106 Wis. 2d 303, 305, 316 N.W.2d 656 (1982) *(WPPA I).* While the constitution does not define these duties, "there can be no doubt that the framers of the constitution had reference to the office with those generally recognized legal duties and functions belonging to it . . . when the constitution was adopted." *State ex rel. Milwaukee Cty. v. Buech,* 171 Wis. 474, 482, 177 N.W. 781 (1920) (citation omitted). However, only the " 'immemorial principal and important duties' of the sheriff at common law are constitutionally protected regardless of their uniqueness." *Manitowoc Cty. v. Local 986B, AFSCME, AFL-CIO,* 168 Wis. 2d 819, 824, 484 N.W.2d 534 (1992).

¶ 10. Thus, "[i]t is the nature of the job [in question] . . . which must be analyzed in light of the sheriff's constitutional powers." *Wisconsin Prof. Police Ass'n v. Dane Cty.,* 149 Wis. 2d 699, 710, 439 N.W.2d 625 (Ct. App. 1989) *(WPPA II).* "If the duty is one of those immemorial principal and important duties that characterized and distinguished the office of sheriff at common law," the sheriff may choose the ways and means of performing the duty and cannot be limited by a collective bargaining agreement. *Id.* By contrast, "internal management and administrative duties," while important, fall within the "mundane and commonplace" duties not preserved at common law. *See Heitkemper,* 194 Wis. 2d at 193; *Manitowoc Cty.,* 168 Wis. 2d at 826–27. Although there is no prior case explicitly holding so, this means that review of collective bargaining agreements involves a case-by-case analysis.

¶ 11. Based on our review of this collective bargaining agreement, we conclude only the "court security officer" provision—Article G-2m, Section 9—impermissibly intrudes upon the sheriff's constitutionally protected prerogatives. The remaining provisions relate only to "hours and conditions of employment" and therefore are properly considered to be mandatory bargaining subjects.

## Court Security Officer Provision

¶ 12. The court security officer provision confines the powers of the court officer to the "Judicial Center" and gives the clerk of courts "priority over the Sheriff in the scheduling, directing and supervision" of deputies serving as the court security officer. This interferes with the sheriff's duty of attendance on the court.

¶ 13. "[A]ttending on the courts is one of the duties preserved for the sheriff by the Wisconsin constitution." *WPPA I*, 106 Wis. 2d at 314. When a duty is constitutionally protected, the sheriff chooses the ways and means of performing it. *Id.* Thus, it does not follow that a collective bargaining agreement may impose a geographical restriction on the duty.

¶ 14. "It is likewise the duty of the sheriff not only to see peace and quiet are maintained in the court but also to see that his deputies . . . perform the duties assigned to them." *Id.* at 312–13 (citation omitted). "The sheriff is the immediate officer of the court and should see that all of its orders . . . are properly carried out and obeyed . . . ." *Id.* at 313 (citation omitted). When performing his common law duties, the sheriff "represents

648

the sovereignty of the State and he has no superiors in his county." *Manitowoc Cty.*, 168 Wis. 2d at 827 (citation omitted). "No other County official supervises his work." *WPPA I*, 106 Wis. 2d at 314. Accordingly, the sheriff cannot be required to delegate to another county official the directory or supervisory authority over attendance upon the court.

██

¶ 15. As far as delegation of scheduling priority to the clerk of courts, this means one of two things. It could mean the clerk is given authority to schedule deputies. However, the clerk "cannot interfere with the sheriff's discretion in appointing bailiffs" to attend on the court, although the court can exclude persons offensive to its order. *See id.* at 312. Thus, it is inappropriate to delegate this scheduling authority to the clerk's office. Scheduling priority could also mean the sheriff is to schedule deputies for the court before scheduling other positions in the sheriff's department. This, however, would require the sheriff to prioritize one constitutional duty over the others. Because the sheriff chooses the ways and means of performing protected duties, the balance between various and competing prerogatives must ultimately be struck by the sheriff, not a collective bargaining agreement.

¶ 16. The Union points out the court security officer provision, like the other disputed provisions, has been in the prior collective bargaining agreements, which were signed and followed with little or no conflict. Problems that did arise were generally settled successfully through mediation. However, the Union cites no authority for its implicit proposition that past practice is relevant to our analysis. Indeed, the scope of the sheriff's constitutional authority is neither contingent upon nor derived from the Union's voluntary

forbearance. The court security officer provision simply intrudes into the sphere of the sheriff's constitutionally preserved duties and powers. Even WERC acknowledged this clause as a "possible exception" among the rest of the provisions. The court security officer provision cannot be a mandatory bargaining subject.[3]

## Remaining Provisions

¶ 17. The County asserts that the remaining proposed rules "would force the sheriff to use the 'regular' employees represented by the Union whether or not he deems reserves, supervisors, or other non-union staff more appropriate." That is, the proposed rules deny "total discretion in selecting who he will assign to conduct those functions for him." The County argues that because the broad duties of maintaining law and order and jail administration are constitutionally protected powers, the collective bargaining agreement cannot limit them.

¶ 18. Our supreme court has addressed collective bargaining agreements involving sheriffs' departments on multiple occasions. It would have been a simple

---

[3] We acknowledge that in *WPPA I*, the supreme court was unable to determine what the court officer's duties would be and therefore remanded the case because it could not discern whether the restriction on those duties conflicted with the sheriff's protected duties. *Wisconsin Prof. Police Ass'n v. Dane Cty.*, 106 Wis. 2d 303, 305, 316 N.W.2d 656 (1982). Here, however, the proposed clause is slightly different because it does not address the court officer's responsibilities but rather, subjugation of the sheriff to the clerk of courts. On that basis, we conclude the wording of the proposed provision is, on its face, an intrusion into the sheriff's realm. If the parties can renegotiate a court security officer provision that does not intrude on the sheriff's duties, they are free to include such provision in their new agreement.

matter for the court to conclude the sheriff has "total discretion" in all matters related to maintaining law and order or preserving the peace. Instead, the supreme court instructed that we must compare the nature of the job to the constitutional prerogatives.[4]

¶ 19. Other than the overly broad argument that these provisions implicate the duties of maintaining law and order or preserving the peace, the County identifies no particular conflict with the remaining provisions. To be sure, the County makes several arguments that, standing alone, are compelling. For example, the County asserts, "Law Enforcement cannot await arbitrations over who is permitted to meet the County's needs for criminal investigations . . . ." It also contends that given the prioritization of Union employees, the sheriff may be forced to staff positions with tired, overworked officers rather than using fresh and rested reserve deputies. The County also argues, "No explanation is given why or how a constitutional duty or power can be turned on and off based on convenience or emergency."

¶ 20. The County's arguments, however, fail to account for our case-by-case standard of review. We cannot modify or overrule supreme court holdings. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). We also do not decide cases based on hypotheti-

---

[4] Moreover, if the sheriff had total discretion in all areas in the manner the County suggests, then we would have to hold WIS. STAT. § 111.70(1)(a) unconstitutional for requiring the sheriff to bargain over even "mundane" matters like wages, hours, and conditions of employment. However, no such challenge has been raised.

651

cal facts. *See Pension Mgmt., Inc. v. DuRose,* 58 Wis. 2d 122, 128, 205 N.W.2d 553 (1973).

¶ 21. Nevertheless, there are two prominent cases on which the County relies for its assertion that assignment of deputies generally is related to preserving the peace and maintaining law and order. The first case is *Washington Cty. v. Washington Cty. Deputy Sheriff's Ass'n,* 192 Wis. 2d 728, 531 N.W.2d 468 (Ct. App. 1995). There, the Harley Davidson company sponsored "Harleyfest 1993" to celebrate the company's ninetieth anniversary. The Washington County sheriff was advised that all the motels and most of the campgrounds in the county had been reserved, and the sheriff began looking into mutual aid from police departments in the county. *Id.* at 731. Ultimately, the sheriff decided that the police officers would be the main presence while the deputy sheriffs, more familiar with the entire county's geography and therefore presumably faster to respond, would be scheduled as back-up. *Id.* at 731–32. One of the deputies filed a grievance after being denied overtime because of the plan. We held the sheriff's "assignment of municipal officers to patrol duty normally assigned to deputies was in the reasonable anticipation of a possible emergency situation during Harleyfest and, *in this case,* was a proper exercise of a sheriff's duty to preserve the peace." *Id.* at 741 (emphasis added).

¶ 22. In *Manitowoc Cty.,* the sheriff reassigned a deputy from patrol duty to undercover drug enforcement. The union objected to the appointment, claiming it violated certain clauses of the collective bargaining agreement. Ultimately, the supreme court focused on the job assigned—undercover detective work—and held that the job was a modern part of the traditional law enforcement and peace preservation duties. *Id.,* 168 Wis. 2d at 831.

¶ 23. In both cases, however, the courts dealt with very specific assignments, not day-to-day routine scheduling requirements. Here, there are no specific job functions covered by the collective bargaining provisions and no particular tasks for us to analyze in light of the sheriff's constitutional prerogatives. Rather, the proposed provisions deal simply with "internal management and administrative duties" which, while important, give neither character nor distinction to the office of sheriff and are therefore not protected. *See Heitkemper*, 194 Wis. 2d at 193.

*By the Court.*—Judgment affirmed in part and reversed in part.