Ozaukee County and Maury Straub,
Ozaukee County Sheriff,
Plaintiffs-Respondents,

v.

Labor Association of Wisconsin,
Defendant-Appellant.

Court of Appeals

*No. 2007AP1615. Oral argument June 3, 2008.
—Decided November 19, 2008.*

2008 WI App 174

(Also reported in 763 N.W.2d 140.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *William R. Rettko* of *Rettko Law Offices, S.C.*, Brookfield.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Ronald S. Stadler* and *Gina M. Ozelie* of *Stadler, Centofanti & Phillips, S.C.*, Mequon. There was oral argument by *Ronald S. Stadler*.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. ANDERSON, P.J. The Labor Association of Wisconsin (LAW) appeals three decisions of the circuit court. LAW's substantive argument is that Ozaukee County and its sheriff, Maury Straub,[1] are in violation of a collective bargaining agreement (CBA) between LAW and Ozaukee County. LAW claims that the circuit court erred when it granted the County's motion for summary judgment asking that the court declare the sheriff's constitutional authority with respect to the Court Services Unit (CSU) and assigning those unit members to transport prisoners of the U.S. Marshal or State of Wisconsin without regard to the CBA. We agree with LAW and, therefore, reverse the circuit court on the merits.

¶ 2. We, however, disagree with LAW's claim that the circuit court abused its discretion when it chose not to grant jurisdiction of the matter to the Wisconsin Employment Relations Commission (WERC). We there-

---

[1] For readability, plaintiffs-respondents Ozaukee County and Sheriff Maury Straub will be referred to collectively as "the County."

fore affirm the circuit court's two discretionary decisions related to WERC jurisdiction.

¶ 3. We address the WERC jurisdictional issues first. On December 22, 2005, LAW filed a motion with the circuit court to adjourn court proceedings and to transfer the case to WERC by declaring that WERC has primary jurisdiction to make findings of fact and conclusions of law regarding the sheriff's inherent powers at common law and constitutional powers to attend the courts and jail of Ozaukee county. On January 20, 2006, the circuit court denied this motion. The court based its decision on the fact that "neither party [had] filed a petition . . . [or] even a proposal to file" a petition before WERC to consider the matter pending before the circuit court. Approximately nine months later, on October 4, 2006, LAW filed a complaint with WERC to consider the matter. In response, on November 17, 2006, the County filed a motion for temporary injunction to prohibit LAW from proceeding any further with grievance and arbitration matters before WERC. The circuit court granted the County's temporary injunction motion on January 22, 2007.

██

¶ 4. On review of a circuit court's decision to retain jurisdiction, this court must determine whether the circuit court abused its discretion. *Browne v. Milwaukee Bd. of Sch. Dirs.*, 83 Wis. 2d 316, 328, 265 N.W.2d 559 (1978). A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). In discussing whether WERC or the circuit court should exercise jurisdiction, the supreme court has said that the court must consider which

course would best serve the ends of justice. *Browne*, 83 Wis. 2d at 329. If statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. *Id.* Additionally, the court properly retains jurisdiction for constitutional questions. *Id.* at 329–30 (where the supreme court specifically acknowledged the propriety of the circuit court retaining jurisdiction instead of transferring it to WERC when the question is constitutional).

■

¶ 5. Because the circuit court had to determine whether the County was acting in a constitutionally protected manner, we conclude that the circuit court did not abuse its discretion by retaining jurisdiction over this action. Furthermore, the circuit court properly reasoned that "[g]iven the stage of the proceeding, the [County] ought to prevail" in its request for a temporary injunction. By the time LAW had filed its petition with WERC, there had been nearly a year of judicial resources[2] utilized to lay a foundation for any necessary fact-finding and the matter was fully on track. We agree with the circuit court that there is no particular expertise or policy question which would benefit from WERC's review.

¶ 6. Thus, we affirm the circuit court's decision to deny LAW's motion to adjourn court proceedings and transfer the case to WERC along with its decision to grant the County's motion for temporary injunction to prohibit LAW from proceeding any further with grievance and arbitration matters before WERC.

¶ 7. We now turn to the substantive issue. This case originated with the County filing a complaint on August 4, 2005, pursuant to Wis. Stat. § 806.04

[2] The circuit court acknowledged that much of the delay in this case was due to the parties meeting and attempting to

(2005–06),[3] in which it requested that the circuit court declare the parties' rights, and rule that the sheriff's constitutional powers to attend upon the courts and administer the jail cannot be limited by the CBA, and that in appointing deputies to the CSU or removing them from the CSU, the sheriff is not bound by the CBA.

¶ 8. Two years into the still pending case, on April 2, 2007, the County filed a motion for summary judgment, arguing that because there was no dispute as to any material fact, the sole issue before the court was whether the sheriff's constitutional duty to attend to the courts and administer the jail can be usurped by a collective bargaining agreement entered into by Ozaukee county.[4] The circuit court granted summary judgment in favor of the County and recognized the sheriff's

---

resolve the matter short of litigation and that this is always a preferable process.

[3] Wisconsin Stat. § 806.04 (2005–06) states in pertinent part:

(1) Scope. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree, except that finality for purposes of filing an appeal as of right shall be determined in accordance with s. 808.03(1).

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[4] The County's motion for summary judgment also asked the circuit court to declare unconstitutional Wis. Stat. § 111.70, which requires the sheriff to bargain over the hours and conditions of employment of his deputies. The circuit court declined to accept the County's invitation to deal with the constitutionality of Wis. Stat. § 111.70, and this issue is not before this court.

constitutional authority to appoint CSU deputies to transport state and federal prisoners who are being housed in Ozaukee county under a rental contract for prisoner bed space.

■

¶ 9. Because the circuit court's ruling on the merits of the case came in the form of a grant of summary judgment, we undertake an essentially de novo examination of the pleadings, affidavits and other papers applying the same standard as the trial court. *See Wright v. Hasley*, 86 Wis. 2d 572, 578–79, 273 N.W.2d 319 (1979). Upon our de novo review, we cannot agree that the County is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2).

¶ 10. In the fall of 2004, Sheriff Maury Straub received a request from the Ozaukee county circuit court to establish additional security within the county courthouse. Subsequently, at Straub's request, on or about March 14, 2005, the U.S. Marshal's Office completed a report recommending major changes and improvements to the security at the Ozaukee County Justice Center. On or about April 22, 2005, the chief judge for Ozaukee county sent Straub a letter requesting that the sheriff appoint deputies to attend to the courts, and to use his best discretion in assigning deputies capable of displaying the highest level of professionalism in dealing with the judges, lawyers, prisoners, witnesses, jurors and the public.

¶ 11. Thereafter, Straub provided LAW with notice of creation of a Court Services Unit (CSU) to become effective July 1, 2005, as part of a reorganization of the sheriff's department for the purpose of creating greater security for the courts. LAW responded to the sheriff's notice by letter, advising him that he could not summarily appoint individuals to the CSU without following the CBA.

¶ 12. The CSU was implemented on July 1, 2005, as planned. Straub selected five deputies to fill full-time CSU positions without regard to the CBA—these positions were not posted within the department, applications were not used, the CBA seniority clause was not regarded. With the county board's approval, Straub hired enough part-time employees to be the equivalent of two full-time employees; part-time employees are not subject to the CBA requirements. This sheriff's department reorganization resulted in up to eight to ten persons being regularly assigned to the CSU. The reorganization also resulted in the elimination of the former court security officer position.

¶ 13. CSU deputies perform a number of duties such as: provide court security in both the courtrooms and the Justice Center, coordinate all bailiff duties, coordinate all jail transport between the jail and the courtrooms, coordinate prisoner transport between the jail and other facilities, serve civil process and warrants, and other miscellaneous duties assigned by the sheriff. Included in the duties of CSU deputies is the coordinating of prisoner movement between the courts and jail together with the scheduling, coordinating and performance of prisoner transports. The duty of prisoner transports includes the transporting of federal and state prisoners.

¶ 14. The federal prisoners are transported for the U.S. Marshal between Chicago and the Ozaukee County Jail. The "holding of federal prisoners" is, in fact, the renting of Ozaukee county jail space to the U.S. Marshal who pays Ozaukee county $60 per day to hold each prisoner. The Ozaukee County Jail has 261 beds, of which the prisoners of the U.S. Marshal use between forty to eighty beds on a daily basis. In addition to paying the rent to house its prisoners, the U.S. Marshal

also pays Ozaukee county an hourly rate of $33.82 plus mileage reimbursement to transport its prisoners between Chicago and the Ozaukee County Jail. The transporting of U.S. Marshal prisoners has been taking place since at least 2003 and occurs weekly, one to five days per week. Two CSU members are required on each federal transport. Federal transports to and from Chicago take an average of ten hours to complete.

¶ 15. Like federal prisoners, State of Wisconsin prisoners are also transported by CSU deputies and held in the Ozaukee County Jail pursuant to a prisoner bed space rental contract with the state which has been in effect since late 2006 or early 2007.

¶ 16. On appeal, the substantive issue is LAW's argument that the sheriff may not disregard the CBA when appointing CSU deputies who transport U.S. Marshal and/or State of Wisconsin prisoners via a rental agreement for bed space.[5] LAW argues that this action goes beyond the inherent constitutional power, right or duty of the sheriff found at common law, and is subject to CBA restrictions. The County counters that appointment of deputies to serve on the CSU gives distinction and character to the office of sheriff and is therefore constitutionally protected.

---

[5] Court Services Unit (CSU) transport teams are also involved in escorting prisoners, ordered to appear in Ozaukee county court, to and from the Ozaukee County Jail and the Ozaukee county court. CSU transport teams transport juvenile prisoners and mental observation prisoners.

On appeal, LAW does not take issue with the creation of the CSU, nor does it take issue with the appointment of deputies to the CSU for any of the other CSU assignments such as courthouse security, bailiff duties, the escorting of prisoners to and from the Ozaukee County Jail, transporting prisoners from the Ozaukee County Jail to other lock-up facilities based upon court orders, process serving and so on.

¶ 17. Both sides recognize the well-settled law that a sheriff may not be restricted in whom he or she assigns to carry out his or her constitutional duties if he or she is performing immemorial, principal, and important duties characterized as belonging to the sheriff at common law. *Wisconsin Prof'l Police Ass'n v. Dane County*, 106 Wis. 2d 303, 312, 316 N.W.2d 656 (1982) (*WPPA I*).

¶ 18. Our Wisconsin Constitution does not delineate what duties belong to the office of sheriff. In 1870, the Wisconsin Supreme Court began to examine what generally recognized duties and functions belonged to the sheriff when the Wisconsin Constitution was adopted. *State ex rel. Kennedy v. Brunst*, 26 Wis. 412, 413, 7 Am. Rep. 84 (1870). *Kennedy* involved an inspector of the Milwaukee County House of Correction seeking a writ of mandamus to compel the sheriff to deliver all prisoners confined in the county jail (along with all associated paperwork). *Id.* The court concluded that the framers of the Wisconsin Constitution intended the office of sheriff to have "those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted." *Id.* at 414.

¶ 19. Subsequent to *Kennedy*, the Wisconsin Supreme Court and this court looked at a variety of cases involving the constitutionally protected powers and duties of the office of the sheriff:

> In 1920, the Wisconsin Supreme Court upheld the constitutionality of a state statute that prohibited a sheriff from appointing deputies except those certified by the civil service commission. *State ex rel. Milwaukee County v. Buech*, 171 Wis. 474, 482, 177 N.W. 781 (1920). *Buech* stated that even though sheriffs possessed the power to appoint deputies at common law, it

111

was not a power that gave "character and distinction to the office" of sheriff. *Id.*

In 1982, the Wisconsin Supreme Court held that the legislature could not constitutionally authorize a collective bargaining agreement which deprived the sheriff of his constitutional authority to choose who among his deputies should act as court officer. *WPPA I*, 106 Wis. 2d at 313–14.

In 1989, the Wisconsin Court of Appeals held that "the power and duty of the sheriff to execute court-issued arrest warrants to bring before the court a prisoner is attendance upon the court which may not be limited by a collective bargaining agreement." *Wisconsin Prof'l Police Ass'n/Law Enforcement Employee Relations Div. v. Dane County*, 149 Wis. 2d 699, 712, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*).

In 1992, the Wisconsin Supreme Court stated that a sheriff reassigning a deputy from patrol duty to undercover drug enforcement was constitutionally protected because it implicated both law enforcement and peace preserving functions of the office of sheriff. *Manitowoc County v. Local 986B, AFSCME, AFL-CIO*, 168 Wis. 2d 819, 830, 484 N.W.2d 534 (1992) (per curiam).

In 1995, the Wisconsin Court of Appeals held that a sheriff had the right to utilize nonbargaining unit law enforcement personnel from other municipalities in anticipation of a public event anticipated to draw thousands of extra people into the county. *Washington County v. Washington County Deputy Sheriff's Ass'n*, 192 Wis. 2d 728, 730, 531 N.W.2d 468 (Ct. App.1995).

In 1995, the Wisconsin Supreme Court held that a sheriff could not fire a deputy in violation of a CBA because firing deputies did not give character or distinction to the office of sheriff. *Heitkemper v. Wirsing*, 194 Wis. 2d 182, 193, 533 N.W.2d 770 (1995).

112

In 2006, the Wisconsin Court of Appeals held that a CBA provision impermissibly delegated scheduling authority to the clerk of courts. *Dunn County v. WERC*, 2006 WI App 120, ¶ 15, 293 Wis. 2d 637, 718 N.W.2d 138.

¶ 20. Finally, in 2007, the Wisconsin Supreme Court undertook a detailed analysis of prior case law concerning the duties of the office of sheriff in *Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO*, 2007 WI 72, 301 Wis. 2d 266, 732 N.W.2d 828. *Kocken* involved a sheriff's decision to stop using county employees to prepare meals for the local jail and instead contract with a private food service provider. *Id.*, ¶ 3. The supreme court noted that the constitutional inquiry is an historical one, but that cases such as *Buech* limited the sheriff's duties to ones that "characterized and distinguished the office." *Kocken*, 301 Wis. 2d 266, ¶ 36. The court went on to expressly approve the following criteria for identifying a sheriff's constitutional powers, rights, and duties: "certain immemorial, principal, and important duties of the sheriff at common law that are peculiar to the office of sheriff and that characterize and distinguish the office are constitutionally protected from legislative interference." *Id.*, ¶ 39.

¶ 21. The *Kocken* court also related those powers that are not constitutionally protected: "powers, rights, and duties of the office of sheriff that are 'mundane and commonplace' 'internal management and administrative' duties, even if they are ever-present aspects of the constitutional office, are not accorded constitutional status." *Id.*, ¶ 42. Finally, the court stressed that "[t]o ignore an analysis of whether the duty at issue is mundane and commonplace and whether it is an internal management and administrative duty is to ignore or misread our case law and to risk

113

over-constitutionalizing the powers of the office of the sheriff, in contravention of the framers' intentions." *Id.*

¶ 22. In light of its analysis, the supreme court in *Kocken* concluded that hiring and firing personnel to provide food service does not fall within the constitutional powers, rights, and duties of the office of sheriff. *Id.*, ¶ 72. The court held that the circuit court erred as a matter of law in concluding that the sheriff had constitutionally protected authority to designate a food service provider without limitation by a collective bargaining agreement. *Id.* The court emphasized that "[a]lthough the constitutional powers and prerogatives of the office of sheriff cannot be limited by collective bargaining agreements, if a function is 'not reserved to the sheriff by the Constitution, then the sheriff may be bound by the collective bargaining agreement entered into between the county and the union . . . .'" *Id.*, ¶ 73 (footnote omitted).

¶ 23. Upon our careful consideration of this recent supreme court synthesis of the law, along with the record, briefs and oral argument, we hold that the assignment of deputies to transport federal and state prisoners to and from the Ozaukee county jail pursuant to a contract for the rental of bed space is not a constitutionally protected duty of the sheriff's office and is thus, subject to the restrictions of the CBA.

¶ 24. Transportation of federal and state government prisoners pursuant to a contract between the county and these entities for rental of bed space is distinguishable from the sorts of duties our precedents have held to be constitutionally protected sheriff's duties.

¶ 25. First, we note that it is the county, not the sheriff, that is solely responsible for the costs of operating and maintaining the county jail and maintaining

114

the prisoners in the county jail, *see* Wis. Stat. § 302.336(3)(a). Thus, it is hard for this court to imagine how this type of prisoner transport, done as a revenue-generating task, is "peculiar to the office of sheriff" or how it in any way can be said to "characterize and distinguish the office."

¶ 26. Second, though CSU's creation came after the Ozaukee county court requested that Straub provide additional security within the county courthouse, we fail to see, despite the County's urging, how prisoner transport for revenue is a duty that addresses a security request. The transport of other entities' prisoners in order to provide prisoners bed space in exchange for revenue is separate and distinct from the types of duties performed to enhance security.

¶ 27. Third, our case law has addressed transportation and housing of *county* prisoners, and it is this particular duty that has been held to be among those that gave character and distinction to the office of sheriff at common law. In this case, we assess the housing and transporting of federal and state prisoners pursuant to a revenue-generating contract. These non-county prisoners are not held at the behest of the Ozaukee court and will have no occasion to go before the Ozaukee court.[6] Thus, in assigning this transport duty, the sheriff is not acting for the court.

---

[6] The exception would be if these contractually held prisoners committed a crime while being housed in the Ozaukee County Jail, at which point they would become both prisoners of the county and the other entity that is paying for their housing. Transport of these now-dual entity prisoners to and from the county jail to the county court *for a crime subject to the jurisdiction of the county* would likely *then* be the type of transport duty that is a duty recognized as within the sheriff's constitutionally protected purview. *See Wisconsin Prof'l Police Ass'n/Law Enforcement Employee Relations Div. v. Dane*

¶ 28. The County disagrees, arguing that the kind of prisoner housed is not relevant to our examination because the sheriff "has long administered [the] jail to do more than house inmates who will be appearing before the county court." In support, the County offers three examples dating from the 1850s. In one, a sheriff used a jail cell to safeguard a child in need of protection;[7] in another, the sheriff of Racine county boarded an inmate for Kenosha county because Kenosha's jail was under construction;[8] in the last, an individual was picked up by a U.S. Marshal presumably pursuant to the Fugitive Slave Act and he was temporarily placed in the Milwaukee county jail until the Marshal could transport him.[9]

¶ 29. These remote examples do not give credence to the County's claim that the sheriff "has long administered [the] jail to do more than house inmates who will be appearing before the county court." Instead, they help dismantle it. In one case, the person housed was not even a prisoner but a child in need of protection. In each of these examples, the housing arrangement was a

_County_, 149 Wis. 2d 699, 439 N.W.2d 625 (Ct. App. 1989) (_WPPA II_). Our ruling today does not address this type of transport.

[7] _See_ Wisconsin Historical Collections, Vol. IV at 107 (1859), http://content.wisconsinhistory.org/cdm4/document.php?CISO ROOT=/whcCISOPTR=759REC=2CISOSHOW=347 (last visited Oct. 27, 2008).

[8] _See_ Wisconsin Magazine of History, Vol. 35, no. 4, Summer at 282 (1952), http://content.wisconsinhistory.org/cdm4/ document. php?CISOROOT=/wmhCISOPTR=19171CISOSHOW= 19133REC=18 (last visited Oct. 27, 2008).

[9] _See "Reminiscences of the busy life of Chauncey C. Olin,"_ pages LV-LVII, http://content.wisconsinhistory.org/cdm4/ document.php?CISOROOT=/tpCISOPTR=15834CISOSHOW =15812REC=11 (last visited Oct. 27, 2008).

*temporary* arrangement. Ongoing, contractual transport and housing of federal and state prisoners in order to generate revenue is a duty of a different nature than these sparse and remote examples of temporary housing from the 1850s. In short, these temporary arrangements do not provide support for the County's position that prisoner transportation, no matter its nature, is a protected, time immemorial duty of the sheriff's office.

¶ 30. Fourth, we reject the County's assertion that "[t]o hold that prisoner transport does not give distinction and character to the office of the sheriff would require this court overrule *WPPA II*." In *WPPA II*, the police association alleged that the sheriff and the county violated a collective bargaining agreement by contracting for prisoner conveyances with the U.S. Marshal's Service rather than assigning the work to bargaining unit personnel. *WPPA II*, 149 Wis. 2d at 700–01. We held that the sheriff's execution of a court-issued arrest warrant to bring before the court a prisoner is attendance on the court, which cannot be limited by a collective bargaining agreement. *Id.* at 701. Notably, we reaffirmed our holding in *WPPA I* by emphasizing that our analysis looks to the nature of the sheriff's duty in light of the sheriff's constitutional powers, not the way in which the sheriff carries out the duty. *WPPA II*, 149 Wis. 2d at 701 (citing *WPPA I*, 106 Wis. 2d at 312).

¶ 31. The instruction in *WPPA II* to look to the "nature" of the duty reinforces the rationale of differentiating county from noncounty prisoner transport duty. When the sheriff enlisted the U.S. Marshal in *WPPA II* for prisoner transport without regard to a collective bargaining agreement, it was within his purview because the prisoner transport was in response to court-issued arrest warrants. His assignments were the

117

transport of prisoners who had court business pending before the local court. Here, in assigning state and federal prisoner transport duty, Straub is not acting in response to a court order and the prisoners transported do not have any county court business. The court's request for additional security cannot reasonably be argued to encompass the duty of transporting other entities' prisoners for revenue. The differing "nature" of the prisoner transport duties in *WPPA II* compared to the "nature" of the duties before us requires a different result than in *WPPA II*. This outcome in no way overrules *WPPA II*; in fact, our rationale is squarely in line with the teaching of *WPPA II*.

¶ 32. Likewise, our reasoning adheres to that of the supreme court in *Kochen*. There, as already noted, the court held that the money-saving action of hiring and firing food service providers without regard to a collective bargaining agreement is not within a sheriff's constitutional prerogatives. *Kochen*, 301 Wis. 2d 266, ¶ 67. It explained that this type of sheriff's duty is not among the "certain immemorial, principal, and important duties of the sheriff at common law that are peculiar to the office of sheriff and that characterize and distinguish the office." *Id.*, ¶ 39. Like the money-saving actions in *Kochen*, the money-generating actions here do not hold up as "certain immemorial, principal, and important duties of the sheriff at common law that are peculiar to the office of sheriff and that characterize and distinguish the office." *See id.*

¶ 33. The prisoner transport duties at bar are similar to those duties considered "powers, rights, and duties of the office of sheriff that are 'mundane and commonplace' 'internal management and administrative' duties, even if they are ever-present aspects of the constitutional office." *See id.*, ¶ 42. In rejecting the

118

County's attempt to lump all types of transport into one, we heed the supreme court's caution in *Kochen* to avoid "over-constitutionalizing the powers of the office of the sheriff, in contravention of the framers' intentions." *Id.*

*By the Court.*—Judgment affirmed in part and reversed in part; orders affirmed.