MILWAUKEE DEPUTY SHERIFF'S ASSOCIATION,
Eric Berlin and Thomas Lamothe,
Plaintiffs-Respondents,

v.

Sheriff David A. CLARKE, Jr.
and Milwaukee County,
Defendants-Appellants.†

Court of Appeals

*No. 2008AP2290. Submitted on briefs February 5, 2009.*
*—Decided June 2, 2009.*

2009 WI App 123

(Also reported in 772 N.W.2d 216.)

† Petition to review denied 11/12/09.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Molly J. Zillig*, Principal Assistant Corporation Counsel, Milwaukee County Corporation Counsel.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jonathan Cermele* of *Cermele & Associates, S.C.*, of Milwaukee.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. Sheriff David A. Clarke, Jr., and Milwaukee County (collectively referred to as Sheriff Clarke) appeal from the portion of the trial court's order interpreting Wis. Stat. § 59.27(4) (2007–08) "to allow David A. Clark[e] Jr., as Milwaukee County Sheriff, to perform the duties identified therein either personally, or by means of the undersheriff of the Milwaukee County Sheriff's Office, or by means of deputies of the Milwaukee County Sheriff's Office (MCSO)."[1] (Parenthetical added.) We conclude that the service and execution of trial court processes, writs, precepts, and orders constitute immemorial, principal and important duties that characterize and distinguish the office of sheriff. As such, Sheriff Clarke has the constitutional authority to determine how to carry out those duties. Accordingly, we reverse that portion of the trial court's ruling at summary judgment to the contrary and remand for further proceedings consistent with this decision.

## I. BACKGROUND.

¶ 2. This matter arises out of a lawsuit filed by the Milwaukee Deputy Sheriff's Association and two of its members (collectively referred to as DSA) seeking a declaration that Sheriff Clarke's attempts to contract with an outside agency for inmate transport services violated Wis. Stat. §§ 302.06 and 59.27(4). DSA also

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

asked the trial court to order Sheriff Clarke to use only its members for the transport of prisoners, mental health patients, and juveniles in custody.

¶ 3. DSA is comprised of sworn, nonsupervising deputies employed by Milwaukee County. When Sheriff Clarke assumed office, DSA members handled all intrastate transports of individuals in custody. In 2007, in an effort to save money and free up additional deputies to work in the field, MCSO considered the possibility of contracting with a private company to provide intrastate transport services for individuals in custody. MCSO prepared a Request for Proposal (RFP) seeking the services of a contract provider of inmate transport. The RFP was published on Milwaukee County's website and in a newspaper advertisement.

¶ 4. MCSO received three proposals from various providers and, after rating the proposals, determined that Transcor had received the highest rating. Pursuant to the terms of the contract that was drafted, Transcor would be responsible for the intrastate transport of mental health patients, juveniles, and prisoners. Seven types of required transports were included in the contract. These were described by Sheriff Clarke in an affidavit as follows:

> The first type of transport involves the execution of a court-ordered warrant. In these instances, a warrant is issued to pick up a defendant for an appearance in court. These individuals are picked up from county jails, state prisons, juvenile facilities, or mental health institutes.
>
> The second type of transport involves the execution of a court-ordered writ. In these instances, a person who is being held in custody is transported from a county jail, state prison, juvenile facility, or mental health institute to Milwaukee County for a court ap-

489

pearance. The third type of transport involves a court-ordered writ directing the return of these individuals to the original facilities.

The fourth type of transport is a mental health transport. These transports are initiated by way of a court order remanding a patient to a state facility.

The fifth type of transport arises from a court order directing newly-sentenced inmates to be transported to a correction facility.

The sixth type of transport involves revocation orders and warrants. In these transports, a court order is issued to pick up a defendant being housed in county jails, state prisons, juvenile facilities or mental health institutes, and to return them to the Milwaukee County Jail prior to a scheduled court date.

The contract also provides for the transport of juveniles. These transports involved disposition orders, wherein a judge orders a juvenile to be delivered to a juvenile or other facility.

(Paragraph numbering omitted.)

¶ 5. After DSA filed suit, Sheriff Clarke sought summary judgment, arguing that the transport services involved are within the realm of his constitutional authority and that consequently, he can direct the method and manner of such services. DSA likewise sought summary judgment (and a declaratory ruling) arguing the converse: that the transport services are outside the realm of Sheriff Clarke's constitutional authority such that he cannot privatize their handling.

¶ 6. Ruling in favor of Sheriff Clarke in part and in favor of DSA in part, the trial court concluded that Sheriff Clarke has the authority to determine how to effectuate Wis. Stat. § 302.06 duties, but not Wis. Stat.

§ 59.27(4) duties.[2] Specifically, the trial court interpreted § 59.27(4) "to allow David A. Clark[e] Jr., as Milwaukee County Sheriff, to perform the duties identified therein either personally, or by means of the undersheriff of [MCSO], or by means of deputies of [MCSO]." As a result, Sheriff Clarke could not privatize those duties. Sheriff Clarke now appeals.

## II. Analysis.

### A. Standard of Review.

██

¶ 7. We review *de novo* a trial court's grant of summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment must be granted when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). "The effect of counter-motions for summary judgment . . . is an assertion by the parties that the facts are undisputed, that in effect the facts are stipulated, and that only issues of law are before the court." *Eichenseer v. Madison-Dane County Tavern League, Inc.*, 2008 WI 38, ¶ 4, 308 Wis. 2d 684, 748 N.W.2d 154.

### B. Sheriff Clarke has constitutional authority over the duties set forth in Wis. Stat. § 59.27(4).

¶ 8. The issue before us is whether the "serv[ice] or execut[ion of] all processes, writs, precepts and orders issued or made by lawful authority and delivered to the sheriff" falls within Sheriff Clarke's constitutional powers, rights, and duties. *See* Wis. Stat.

---

[2] The trial court's ruling regarding Sheriff Clarke's authority under Wis. Stat. § 302.06 is not at issue in this appeal.

§ 59.27(4).[3] As set forth below, we hold that these are immemorial, principal, and important duties that characterize and distinguish the office of sheriff, and as such, they fall within Sheriff Clarke's constitutional powers. Consequently, the trial court erred as a matter of law when it concluded that Sheriff Clarke could not privatize those duties.

¶ 9. Although the Wisconsin Constitution establishes the office of sheriff, it "does not delineate the powers, rights, and duties of the office of sheriff." *Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO*, 2007 WI 72, ¶¶ 31, 33, 301 Wis. 2d 266, 732 N.W.2d 828; *see also* WIS. CONST. art. VI, § 4. As a result, we look to the case law for guidance.

¶ 10. " 'It is the nature of the job [in question] . . . which must be analyzed in light of the sheriff's constitutional powers.' " *Wisconsin Prof'l Police Ass'n v. Dane County*, 149 Wis. 2d 699, 710, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*) (ellipses in *WPPA II*; quoting *Wisconsin Prof'l Police Ass'n v. County of Dane*, 106 Wis. 2d 303, 312, 316 N.W.2d 656 (1982) (*WPPA I*)), which was remanded for a determination of the specific duties of the "court officer" in question, because they were not clear from the record). "If the duty is one of those immemorial principal and important duties that characterized and distinguished the office of sheriff at common law, the sheriff 'chooses his own ways and means of performing it.' " *Id.* (quoting *WPPA I*, 106

---

[3] WISCONSIN STAT. § 59.27 provides: "The sheriff of a county shall do all of the following: . . . **(4)** Personally, or by the undersheriff or deputies, serve or execute all processes, writs, precepts and orders issued or made by lawful authority and delivered to the sheriff."

Wis. 2d at 314). In contrast, where the "powers, rights, and duties of the office of sheriff . . . are 'mundane and commonplace' 'internal management and administrative' duties, even if they are ever-present aspects of the constitutional office, [they] are not accorded constitutional status." *Kocken*, 301 Wis. 2d 266, ¶ 42.

¶ 11. At the outset, DSA argues that the transport of prisoners was not peculiar to, nor did it characterize and distinguish the office of the sheriff at common law. With respect to the notion of peculiarity, DSA relies on our supreme court's statement in *Kocken* that "immemorial, principal, and important duties of the sheriff at common law that are *peculiar* to the office of sheriff and that characterize and distinguish the office are constitutionally protected from legislative interference." *See id.*, 301 Wis. 2d 266, ¶ 39 (emphasis added); *see also Ozaukee County v. Labor Ass'n of Wis.*, 2008 WI App 174, ¶ 20, 315 Wis. 2d 102, 763 N.W.2d 140 (citing *Kocken* for this same proposition).

¶ 12. DSA asserts that as part of its official duties, the U.S. Marshal transported prisoners at the time Wisconsin's constitution was ratified. As such, DSA contends: "Given the concomitant duties of a Marshal and Sheriff prior to our constitution having been ratified, the transportation of prisoners cannot be something that was either 'peculiar to' or gave 'character and distinction to' the office of sheriff at common law." Consequently, DSA argues that Sheriff Clarke cannot invoke constitutional authority over that task.

¶ 13. Based on the recent decision in *Brown County Sheriff's Department Non-Supervisory Labor Association v. Brown County*, 2009 WI App 75, 318 Wis. 2d 774, 767 N.W.2d 600, we disagree with the contention that because the U.S. Marshal transported prisoners, that duty necessarily falls outside the realm

of Sheriff Clarke's constitutional authority.[4] There, the court, which was presented with the same issue as in this case, rejected this argument, holding that it "cannot be reconciled with our decision in *WPPA II,* where we held the sheriff's transport of interstate prisoners was constitutionally protected, even where the Marshal's Service also performed that task and was actually contracted with to do so in that case."[5] *Brown County,* 767 N.W.2d 600, ¶ 9 n.1.

---

[4] This decision was released on April 21, 2009.

[5] Based on the discussion of *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920), in *Manitowoc County v. Local 986B, AFSCME, AFL-CIO,* 168 Wis. 2d 819, 484 N.W.2d 534 (1992) (per curiam), Sheriff Clarke argues that there is no peculiarity requirement. The court in *Manitowoc County* explained:

> The court of appeals in this case interpreted *Buech* as holding that only those duties "unique" to the office at common law are constitutionally protected, because *Buech* noted that the power to appoint deputies was shared by "[m]any other officers" and "was not peculiar to the office of sheriff." We disagree with this interpretation. A more logical reading of *Buech* is that only those duties which "gave character and distinction" to the office of sheriff at common law are constitutionally protected, and that the power of appointing deputies, being rather mundane and commonplace, did not give character and distinction to the office of sheriff at common law. This interpretation is also more consistent with [*State ex rel. Kennedy v.*] *Brunst,* [26 Wis. 412 (1870),] and *WPPA I.*

*Manitowoc County,* 168 Wis. 2d at 826–27 (first set of brackets in *Manitowoc County*).

In light of the reasoning set forth in *Manitowoc County* making clear that uniqueness is not a requirement, the reference in *Kocken* to peculiarity, *see Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO,* 2007 WI 72, ¶ 39, 301 Wis. 2d 266, 732 N.W.2d 828, seems at odds given that the terms can be construed to be synonymous. If a conflict exists in this regard, it isone that we need not resolve because *Brown County Sheriff's*

¶ 14. Thus, we turn our focus to whether the duty at issue is "one of those immemorial principal and important duties that characterized and distinguished the office of sheriff at common law." *See WPPA II*, 149 Wis. 2d at 710. We are persuaded by Sheriff Clarke's argument that the transport of individuals in conjunction with the "serv[ice] or execut[ion of] all processes, writs, precepts and orders," *see* Wis. Stat. § 59.27(4), should be analyzed in light of the sheriff's constitutional powers of attendance on the court. *See Brown County*, 767 N.W.2d 600, ¶ 8 ("[W]e conclude that transporting prisoners pursuant to court-issued writs, orders, warrants, and judgments of conviction is attending on the court.").

¶ 15. Our supreme court explained in *WPPA I* the office of the sheriff's constitutional authority pertaining to "attendance on the court" as follows:

> "Attendance on the Court" is in the same category of powers inherent in the sheriff as is running the jail. Just as . . . the legislature cannot deprive the sheriff of control of the jail, neither can the legislature through a statute authorizing collective bargaining by the county board and a union deprive the sheriff of his authority to select who among his deputies shall act in his stead in attendance on the court.

*Id.*, 106 Wis. 2d at 313. More recently we held that "the sheriff cannot be required to delegate to another county official the directory or supervisory authority over atten-

*Department Non-Supervisory Labor Association v. Brown County*, 2009 WI App 75, ¶ 9 n.1, 318 Wis. 2d 774, 767 N.W.2d 600, makes clear that the fact that the U.S. Marshall possessed the exact same duty does not negate Sheriff Clarke's constitutional authority over it.

dance upon the court." *Dunn County v. WERC*, 2006 WI App 120, ¶ 14, 293 Wis. 2d 637, 718 N.W.2d 138.

¶ 16. The factual context of *WPPA II* is persuasive on this point. There, a police association alleged that the sheriff and the county violated the parties' collective bargaining agreement by contracting with the U.S. Marshal's Service for the interstate conveyance of prisoners as opposed to assigning the work to members of the bargaining unit. *WPPA II*, 149 Wis. 2d at 700–01. The court concluded that "[t]he sheriff's execution of a court-issued arrest warrant to bring before the court a prisoner is attendance on the court, which cannot be limited by a collective bargaining agreement." *Id.* at 701.

¶ 17. Despite what we construe to be factually similar contexts, DSA argues *WPPA II* is distinguishable and does not control the circumstances presented. To distinguish the case, DSA asserts three separate bases: (1) *WPPA II* involved the execution of an arrest warrant, which DSA describes as "a directive to *any* law enforcement officer to pick up a specific individual" (emphasis in brief), as opposed to the writs at issue here, which specifically direct that the prisoner be turned over to the "Sheriff of Milwaukee County"; (2) *WPPA II* addressed interstate transport of prisoners, as opposed to the intrastate transport at issue here, which DSA claims is significant given that WIS. STAT. §§ 59.27(4) and 302.06 govern intrastate transport and provide specific direction to the sheriff (in contrast to *WPPA II* where no such statute existed); and (3) *WPPA II* involved county prisoners whereas this case involves state prisoners.

¶ 18. As to DSA's first point, we agree with Sheriff Clarke that "[t]he fact [that] a particular writ is addressed to members of the Sheriff's Department doesn't

change the underlying constitutional duty that is being carried out." (Italics in brief omitted.) *See Brown County*, 767 N.W.2d 600, ¶ 14 ("The writs' language [directing that prisoners be released to 'Officers of the Brown County Sheriff's Department'] does not alter the fact that [Sheriff] Kocken is performing the constitutionally protected duty of attending on the court when acting under the writs."). Whether serving a writ specifically directed to the sheriff or an arrest warrant directed to any law enforcement officer, both scenarios involve attendance on the court and involve prisoners being transported pursuant to court order. As stated by Sheriff Clarke, "[f]rom the standpoint of analyzing constitutional authority of the Sheriff, [DSA]'s point creates a distinction without a difference."

¶ 19. In terms of the differentiation between interstate and intrastate transport, this too is a distinction without a difference for purposes of the underlying analysis. The *WPPA II* court's conclusion remains sound regardless of whether the transportation at issue is within or outside state lines. Likewise, the fact that WIS. STAT. § 59.27(4) specifically directs that the sheriff must act personally or by means of his undersheriff or deputies is not persuasive, as *Kocken* makes clear: "Of course, the simple fact that the legislature codified a duty and responsibility of the sheriff, like providing food for jail inmates, does not strip sheriffs of any constitutional protections they may have regarding this duty." *Id.*, 301 Wis. 2d 266, ¶ 47.

¶ 20. As for DSA's final attempt to distinguish *WPPA II* on the basis that it involved county prisoners as opposed to state prisoners, this argument loses sight of the fact that " '[i]t is the nature of the job [in question] . . . which must be analyzed in light of the sheriff's constitutional powers.' " *See id.*, 149 Wis. 2d at

710 (citation omitted). The nature of the job at issue is strikingly similar to that at issue in *WPPA II*. Consequently, *WPPA II* compels the conclusion in this case that the duties set forth in WIS. STAT. § 59.27(4) are immemorial, principal, and important duties that characterize and distinguish the office of sheriff.

¶ 21. We are persuaded that this conclusion is correct by our recent decision in *Ozaukee County*, which, although distinguishable on its own facts, nevertheless is instructive insofar as it addresses *WPPA II*. In *Ozaukee County*, the court held "the assignment of deputies to transport federal and state prisoners to and from the Ozaukee county jail pursuant to a contract for the rental of bed space is not a constitutionally protected duty of the sheriff's office and is thus, subject to the restrictions of the [collective bargaining agreement]." *Id.*, 315 Wis. 2d 102, ¶ 23. The *Ozaukee County* court went on to conclude that the "[t]ransportation of federal and state government prisoners pursuant to a contract between the county and these entities for rental of bed space is distinguishable from the sorts of duties our precedents have held to be constitutionally protected sheriff's duties." *Id.*, ¶ 24.

¶ 22. Although the "type of prisoner transport, done as a revenue-generating task," at issue in *Ozaukee County, see id.*, ¶ 25, is distinguishable from the facts presented here, which involve the execution of various court orders, we nevertheless rely on a distinction made by the *Ozaukee County* court:

> When the sheriff enlisted the U.S. Marshal in *WPPA II* for prisoner transport without regard to a collective bargaining agreement, it was within his purview because the prisoner transport was in response to court-issued arrest warrants. His assignments were the transport of prisoners who had court business pending

498

before the local court. Here, in assigning state and federal prisoner transport duty, [the sheriff] is not acting in response to a court order and the prisoners transported do not have any county court business. The court's request for additional security cannot reasonably be argued to encompass the duty of transporting other entities' prisoners for revenue. The differing "nature" of the prisoner transport duties in *WPPA II* compared to the "nature" of the duties before us requires a different result than in *WPPA II*.

*Ozaukee County*, 315 Wis. 2d 102, ¶ 31. While the sheriff was not acting for the court in carrying out the revenue-generating transport duty at issue in *Ozaukee County*, *see id.*, ¶ 27, the same cannot be said here where, like in *WPPA II*, the "nature" of the duties involved directly relate to effectuating court orders, *cf. Brown County*, 767 N.W.2d 600, ¶ 8 (holding, "[c]onsistent with our reasoning in *WPPA II* and *Ozaukee County*, we conclude that transporting prisoners pursuant to court-issued writs, orders, warrants, and judgments of conviction is attending on the court. Because the sheriff is attending on the court, his duty to transport prisoners at court direction is constitutionally protected").

¶ 23. DSA goes on to argue that this is not an "assignment case" in that "[i]t does not address whether Sheriff Clarke has authority to 'assign' one deputy over another to effectuate prisoner transports under [Wis. Stat. §] 59.27(4)." We agree. As stated above, the crux of this case is whether the transport of individuals in conjunction with the "serv[ice] or execut[ion of] all processes, writs, precepts and orders" falls within Sheriff Clarke's constitutional powers, rights, and duties. *See* Wis. Stat. § 59.27(4). Again, in an effort to ascertain the scope of Sheriff Clarke's constitutional authority,

our inquiry focuses on the nature of the task involved, as opposed to Sheriff Clarke's general power of appointment or his ability to assign a task. *See Kocken*, 301 Wis. 2d 266, ¶ 54 n.37 (discussing the inquiry to be made, pursuant to *WPPA I*); *see also id.*, ¶ 67 ("Adhering to case law, we focus on the nature of the job assigned, that is, providing food, rather than the general power of job assignment.").

¶ 24. DSA casts a wide net in its effort to liken this case to *Kocken* by contending that "as was the case in *Kocken*, the real issue is whether Sheriff Clarke has constitutional authority to hire and fire personnel to transport prisoners under § 59.27(4)." *See Kocken*, 301 Wis. 2d 266, ¶ 4 (holding "that the Sheriff's hiring and firing of personnel to provide food service to the county jail is not a time immemorial, principal, and important duty that characterizes and distinguishes the office of sheriff, and as such, is not within the Sheriff's constitutional powers"). We are not convinced that this case can properly be described as centering on the hiring and firing of personnel, as again, this categorization loses sight of " 'the nature of the job [in question],' " *see WPPA II*, 149 Wis. 2d at 710 (citation omitted), which is not hiring and firing personnel, but rather, the carrying out of the duties set forth under § 59.27(4).

¶ 25. As its final argument, DSA further asserts that Sheriff Clarke is prohibited from contracting away his authority to act. As support, DSA cites *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 205 N.W.2d 784 (1973), and a 1988 Attorney General Opinion, *see* 77 Wis. Op. Att'y Gen. 94 (1988). *Hammermill* is not persuasive here because, in contrast to the municipality at issue in that case, Sheriff Clarke is not " 'a creature of legislatively delegated power.' " *See id.*, 58 Wis. 2d at 80 (citation omitted). We agree with the

following assertion by Sheriff Clarke: "The constitutional authority did not come from the legislature and the legislature has no power to affect it."

¶ 26. Likewise, we are not persuaded by the Attorney General's Opinion on which DSA relies. The caption of the Opinion reads: "Neither the sheriff nor the county board may 'privatize' the jailer function of the office of sheriff under section 59.23(1) [the precursor to 59.27(1)], Stats., by contracting with a private firm to take charge and custody of county prisoners held in the county jail." *See* 77 Wis. Op. Att'y Gen. 94; *see generally* 1995 Wis. Act 201, § 276 (renumbering WIS. STAT. § 59.23(1) as WIS. STAT. § 59.27(1)). Insofar as the courts in *WPPA II* and *Brown County* did not view this opinion as an impediment, neither do we. *See Kocken*, 301 Wis. 2d 266, ¶ 51 n.34 ("Attorney General Opinions, whether published or unpublished, are not binding authority . . . . [We] may, however, choose to treat them as persuasive authority and gain guidance from their analyses."). Furthermore, the Opinion does not discuss the statutory subsection at issue here.

¶ 27. Both parties devote substantial space in their briefs for arguments related to statutory interpretation.[6] However, given our conclusion that Sheriff Clarke has the constitutional authority to privatize the

[6] DSA also asserts that the trial court did not reach the issue of Sheriff Clarke's constitutional authority and instead limited its decision to a statutory analysis of WIS. STAT. §§ 302.06 and 59.27(4). First, we point out that because our review is *de novo,* we are not required to approach the issue in the same fashion as the trial court.

The record is clear that the trial court limited its decision to a statutory analysis. Specifically, the trial court expressed concern related to the fact that if it held that Sheriff Clarke had constitutional authority over the duties set forth in WIS. STAT.

duties set forth in Wis. Stat. § 59.27(4), we need not comment further on whether the statutory language affords additional support for (or, as submitted by DSA, disagreement with) this conclusion. *See Brown County,* 767 N.W.2d 600, ¶ 10; *see also id.,* ¶¶ 11–12 (addressing statutory arguments raised); *Kocken,* 301 Wis. 2d 266, ¶ 47 ("[T]he simple fact that the legislature codified a duty and responsibility of the sheriff, like providing food for jail inmates, does not strip sheriffs of any constitutional protections they may have regarding this duty.").

¶ 28. We recognize that this outcome is to a certain extent counterintuitive when one considers the original rationale set forth in *State ex rel. Kennedy v. Brunst,* 26 Wis. 412 (1870). The *Brunst* court held that

§§ 302.06 and 59.27(4), it would mean that Sheriff Clarke could in turn privatize those duties by relying on a third party:

> I have explained to you why I think that the best approach is to analyze the statute and not the constitutional issues. It concerns me that if the sheriff has a constitutional duty or a constitutional responsibility or even authority on a particular aspect of the issues here, that is, the transport of people from prisons to court and court to prisons .... [or] [i]f the sheriff has a constitutional duty or responsibility or even authority to execute court orders for the production in court or the return to prison or to the jail of certain prisoners or the constitutional authority, duty or responsibility to deliver newly[]sentenced prisoners to Wisconsin state prisons, then it seems to me that the sheriff is the one who should do it; and if that's unique and particular to the office, then it's not an appropriate thing for contracting out to a third party.

> In any event, both of the lawyers see this whole analysis differently, and I understand that the case law seems to say what the lawyers are saying that if the sheriff has got the authority, that means he can do it any way he wants, even through third parties. However, that's the constitutional issue, and I am not focusing on the constitutional issue ....

While we share the trial court's concern in this regard, *see infra* ¶ 28, the case law requires us to construe the scope of Sheriff Clarke's constitutional authority.

502

legislation was invalid because it sought to take away from the sheriff duties that were characteristic of the office. The rationale in *Brunst* was that public policy favored keeping characteristic duties of the sheriff under the power of the sheriff because he is elected, and consequently, is answerable to the electors. *See id.* at 414–15; *see also Kocken*, 301 Wis. 2d 266, ¶ 35 (discussing the reasoning in *Brunst* as being that "unless these 'time immemorial' duties were constitutionally protected from interference by others, the constitutional provision securing the people the right to choose sheriffs would become meaningless"). It seems incongruous to us that the policy of keeping duties within the office of sheriff because he is elected and answerable to the electors is consistent with the holdings in *WPPA II* (and, more recently *Brown County*), where the court held that because the duty was characteristically the sheriff's, he can, as a result, contract with third parties for the carrying out of the duty. Yet, we are bound by *WPPA II* (and its interpretation of *Brunst*) and *Brown County*. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (holding that "the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals").

██

¶ 29. For the reasons stated, we reverse the trial court's ruling at summary judgment that Sheriff Clarke does not have constitutional authority over the duties set forth in Wis. Stat. § 59.27(4). We hold that those duties are immemorial, principal, and important duties that characterize and distinguish the office of sheriff and are not mundane and commonplace internal management or administrative duties. This conclusion is in accord with the recent decision in *Brown County*, which also involved the sheriff's privatization of duties related

to the transport of prisoners at the direction of the court. *See id.*, 767 N.W.2d 600, ¶¶ 1, 8. We remand for further proceedings consistent with this decision.

*By the Court.*—Order reversed in part and cause remanded for further proceedings consistent with this decision.