WASHINGTON COUNTY, a Municipal Employer,
Plaintiff-Respondent,†

v.

WASHINGTON COUNTY DEPUTY SHERIFF'S ASSOCIATION,
a Labor Organization, Defendant-Appellant.

Court of Appeals

*No. 2008AP1210. Submitted on briefs December 2, 2008.
—Decided June 16, 2009.*

2009 WI App 116

(Also reported in 772 N.W.2d 697.)

† Petition to review dismissed 1/14/10. Ziegler, J., took no
part.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Nola J. Hitchcock Cross* of *Cross Law Firm, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Alyson K. Zierdt* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. The Washington County Deputy Sheriff's Association (WCDSA) appeals the trial court's order prohibiting arbitration of its grievance against the Sheriff. The trial court declared that the Sheriff's decision to staff the security screening station at the Washington County Justice Center with special deputies was part of the Sheriff's constitutionally protected powers and could not be limited by a collective

bargaining agreement. We reverse because we conclude that staffing the x-ray and metal detector security screening station is not one of those "certain immemorial, principal, and important duties of the sheriff at common law that are peculiar to the office of sheriff and that characterize and distinguish the office." *Kocken v. Wisconsin Council 40*, 2007 WI 72, ¶ 39, 301 Wis. 2d 266, 732 N.W.2d 828.

### BACKGROUND

¶ 2. Washington County started the planning for a new justice center in 2005. The design included a new secure entrance, which did not exist previously. The purpose for the building was to bring the courts and other offices all into one wing of Washington County's court complex. During the 2006 county budget process, Sheriff Brian Rahn proposed to the County Board Committee that the security screening station be staffed with two full-time deputy sheriffs for the additional security needs of the newly constructed justice center. He made the request partly due to some security concerns expressed by judges. The County Board Committee, without reaching a conclusion, then discussed with Sheriff Rahn the possibility of privatizing the staffing of the security screening station. Sheriff Rahn reworked his proposal and came back to the County Board Committee with an alternative proposal of staffing the security screening station with two part-time special deputies. The County Board Committee approved the alternate proposal. Sheriff Rahn testified at his deposition that he would have preferred the full-time deputy sheriffs and only made the alternate proposal because the County was considering privatizing

the staff for the security screening station. He testified that the final decision on hiring the special deputies was his own.

¶ 3. In May 2006, the WCDSA filed a grievance claiming that the hiring of the part-time special deputies, who were non-union, was a violation of the collective bargaining agreement. The WCDSA petitioned the Wisconsin Employment Review Commission ("WERC") for arbitration. The County filed a declaratory judgment lawsuit and a petition for an injunction to prevent the arbitration. The parties submitted briefs and affidavits, and the trial court held a hearing on the County's motions. The trial court made a factual finding, which is undisputed by the parties, describing the nature of the job involved in the grievance:

> The nature of the job to which Sheriff Rahn assigned the Special Deputies was performing courthouse entrance security screening duties, *including manning a walk-through metal detector and an x-ray machine to look for weapons and other things that were not permitted in the Justice Center.*

(Emphasis added.)

¶ 4. The trial court granted the County's motion declaring that the grievance was not substantively arbitrable because the decision to staff the security screening station with special deputies was part of the Sheriff's constitutionally protected duties. The trial court granted the County's injunction request and ordered the WCDSA to withdraw the grievance. WCDSA appeals.

¶ 5. The facts in this case are undisputed, with one exception. WCDSA contends that the County Board Committee made the decision that special deputies would be hired. The County contends that the Sheriff

made that decision. The trial court's order of February 28, 2008, included the specific factual finding that the Sheriff made the decision to staff the security screening station with special deputies.

## STANDARDS OF REVIEW

¶ 6. We review the trial court's decision granting the County's motion for declaratory judgment without deference to the decision of the trial court. *See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

¶ 7. We review the disputed issue of fact in this case, whether the County or the Sheriff made the decision to staff the security screening station with part-time special deputies, under the "clearly erroneous" standard. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). The finding is not "clearly erroneous" when there is credible evidence in the record to support it. *See Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998).

## I. The Trial Court's Disputed Factual Finding Is Not "Clearly Erroneous"

¶ 8. WCDSA argues that the decision to staff the security screening station with special deputies was really made by the County Board Committee and, therefore, the staffing decision was not part of the Sheriff's exercise of his constitutionally protected powers. The County argues that the Sheriff made the staffing decision. The trial court found that the Sheriff made the staffing decision. That finding was not clearly erroneous.

¶ 9. There is evidence in the record supporting the trial court's finding that the Sheriff was the one who made the decision. In his deposition testimony, Sheriff Rahn stated that he was the first to propose two full-time deputy sheriffs to staff the new security screening station. He agreed that if the County Board Committee had approved his initial proposal to hire two new full-time deputies, he would have staffed the security screening station with the new deputies. He acknowledged that he only revised the proposal because the County officials required him to do so. But on redirect by the County's attorney, Sheriff Rahn testified that he revised the proposal because the County officials advised him to come back with additional options after they had discussed privatization of the staff at the security screening station. When directly asked who made the decision to staff the secure entrance with the special deputies, he said he did.

¶ 10. WCDSA argues that by discussing privatization of the positions, the County, in effect, was making the decision to staff the security screening station with special deputies. But this argument ignores two obvious facts. First, the County only discussed, and did not order, privatization. And second, the topic being discussed was hiring private-sector security officers, not part-time special deputies of the Washington County Sheriff's Department. WCDSA does not offer any evidence from the record demonstrating that it was the County that initiated or ordered the special deputies. Accordingly, the record supports the trial court's finding that it was the Sheriff who decided to staff with special deputies; and we cannot say that finding was clearly erroneous.

## II. The Sheriff's Constitutionally Protected Duties

¶ 11. The main issue on appeal is whether the Sheriff's decision to staff x-ray and metal detector machines with part-time special deputies is one of the Sheriff's constitutionally protected duties. A sheriff cannot be constrained by a collective bargaining agreement if he acts on his constitutional powers. *See Wisconsin Prof'l Police Ass'n v. Dane County*, 106 Wis. 2d 303, 305, 316 N.W.2d 656 (1982) (*WPPA I*); *Dunn County v. WERC*, 2006 WI App 120, ¶ 15, 293 Wis. 2d 637, 718 N.W.2d 138. If the Sheriff's decision to staff the security screening station with special deputies was not part of his constitutionally protected duties, then it is substantively arbitrable under the collective bargaining agreement.

¶ 12. The Wisconsin Constitution does not define the duties of a sheriff, but case law has described examples and a method of analysis. Initially, the definition of whether duties were part of the sheriff's constitutionally protected powers focused on a historical analysis of whether they were longstanding established duties of the sheriff at common law such as housing the county's prisoners in the jail. *See State ex rel. Kennedy v. Brunst*, 26 Wis. 412, 414 (1870). But, in *State ex. rel. Milwaukee County v. Buech*, 171 Wis. 474, 177 N.W. 781 (1920), the Wisconsin Supreme Court shifted the focus of the analysis to those duties that characterized and distinguished the office of sheriff, rather than whether they existed at common law. *See Buech*, 171 Wis. at 481–82. "If the duty is one of those immemorial principal and important duties that characterized and distin-

guished the office of sheriff at common law, the sheriff 'chooses his own ways and means of performing it.' " *See Wisconsin Prof'l Police Ass'n v. Dane County*, 149 Wis. 2d 699, 710, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*) (quoting *WPPA I*, 106 Wis. 2d at 314).

¶ 13. To properly determine whether the assigned job is within constitutional protection, we first examine the nature of the job or duty. *See WPPA I*, 106 Wis. 2d at 312. The trial court made a finding here on the nature of the security screening station job:

> The nature of the job to which Sheriff Rahn assigned the Special Deputies was performing courthouse entrance security screening duties, including manning a walk-through metal detector and an x-ray machine to look for weapons and other things that were not permitted in the Justice Center.

¶ 14. Neither party has disputed this finding on appeal. Accordingly, we must determine whether manning the walk-through metal detector and x-ray machine to look for weapons and other things that are not permitted in the Justice Center are duties that are "one of these immemorial principal and important duties that characterized and distinguished the office of sheriff at common law." *See WPPA II*, 149 Wis. 2d at 710.

¶ 15. No Wisconsin case has yet addressed whether the staffing of security screening stations is part of the sheriff's constitutionally protected duties. Part of the reason for this is that such stations have not existed until recent times. Now, however, it is common to see metal detector screening stations at airports, schools, sporting events and both private and public building entrances. The record states clearly that the Washington County Justice Center secure entrance is new with the 2006 opening of the building. Certainly, it

cannot be said that staffing the security screening station at the Washington County Justice Center is a time immemorial duty of the sheriff.

¶ 16. Nonetheless, the County argues that staffing the screening station machines is part of the Sheriff's inherent constitutional powers because it is similar to: (1) "attendance upon the courts," which the Wisconsin Supreme Court has determined to be part of the Sheriff's constitutional powers, *see WPPA I*, 106 Wis. 2d at 313 (court security officer is part of sheriff's constitutionally protected duties) (citing *Brunst*, 26 Wis. at 415; *see also* Wis. Stat. § 59.27(3) (2007–08); and (2) the sheriff's general law enforcement powers, which our supreme court has also found to be constitutionally protected, *Washington County v. Deputy Sheriff's Ass'n*, 192 Wis. 2d 728, 741, 531 N.W.2d 468 (Ct. App. 1995) (assigning municipal officers to patrol Harleyfest is part of the sheriff's constitutionally protected duties).

¶ 17. We first address the County's argument that manning the security screening station machines is similar to "attendance upon the courts." In *Dunn County*, we held that the assignment of bailiffs to attend upon the court and supervision over their schedules is one of the sheriff's constitutionally protected duties. *See id.*, 293 Wis. 2d 637, ¶ 15 (citing *WPPA I*, 106 Wis. 2d at 312).

¶ 18. More recently, in a series of three decisions, we have held that execution of orders issued by the county's judges is part of the sheriff's constitutionally protected duty of attendance upon the court. In *WPPA II*, we held that "when the sheriff executes an arrest warrant issued by the court to bring a prisoner before the court the sheriff attends upon the court." *Id.*, 149

Wis. 2d at 707.[1] In *Brown County Sheriff's Department Non-Supervisory Labor Ass'n v. Brown County*, 2009 WI App 75, 318 Wis. 2d 774, 767 N.W.2d 600, we held that transportation of the county's prisoners was part of the sheriff's constitutionally protected duties. *See id.*, ¶ 8. And, in *Milwaukee County Deputy Sheriff's Ass'n v. Clarke*, No. 2008AP2290, slip op. (WI App June 2, 2009, recommended for publication), we held that transporting prisoners and effectuating other orders of the county's judges is part of the sheriff's constitutional duty to attend upon the courts. *See id.*, ¶ 29. The exception to this line of cases is where the sheriff is transporting prisoners from other jurisdictions as a revenue-generating operation. *Ozaukee County v. Labor Ass'n of Wis.*, 2008 WI App 174, ¶ 31, 315 Wis. 2d 102, 763 N.W.2d 140. When the sheriff is executing orders from jurisdictions other than his own, he is not acting within his constitutional powers. *Id.*

¶ 19. The nature of the job of security screening is not similar to these other examples of attendance upon the courts. Operating the metal detector and x-ray machine at an entrance to the Washington County Justice Center, which houses offices, as well as courts, is not at all comparable to being the court's security officer within the courtroom. The visitors of the Justice Center include visitors and employees of the housed offices, as well as the courts. The deputies at the security screening station are not stationed *in* the courts nor do they patrol or monitor the courtrooms in any way. The security screening station deputies have no function that relates to executing judges' orders. And, screening for things

---

[1] We note, with some irony, that because the duty is part of the sheriff's constitutional powers, he is permitted to delegate the task to an entity outside his department—here the U.S. Marshal's Service.

*other than weapons* "and other things not permitted in the Justice Center" is too far a stretch to meet the description of attending upon the courts. None of the security screening station deputies' duties compares in any way to those duties of the sheriff that we have held are constitutionally protected as part of the Sheriff's recognized duty to attend upon the courts.

¶ 20. The County next argues that manning the screening station machines here is part of the Sheriff's constitutional duties because they are similar to other duties that have been found to be constitutionally protected, such as providing law enforcement. The Wisconsin courts have determined that maintaining law and order and preserving the peace are parts of the sheriff's constitutionally protected duties. *See Manitowoc County v. Local 986B,* 168 Wis. 2d 819, 830, 484 N.W.2d 534 (1992) (per curiam) (reassignment of deputy from patrol to undercover drug investigations); *Washington County,* 192 Wis. 2d at 741 (sheriff's assignment of municipal officers to augment his county-wide law enforcement duty for Harleyfest).

¶ 21. Here, waiving the metal-detecting wand or listening for the buzzer to ring at the county's combined-use office building is a far cry from the sheriff's county-wide law enforcement responsibilities noted above. It is a function frequently performed by private security guards at airports, schools, movie theaters, retail stores and public buildings.

¶ 22. The nature of the job of security screening is really administrative. Duties of the sheriff that are excluded from constitutional protection have been described as "internal management and administrative duties" or "mundane and common administrative duties." *Heitkemper v. Wirsing,* 194 Wis. 2d 182, 193, 533 N.W.2d 770 (1995). Examples of "internal management

and administrative duties" are: (1) preparation of food for inmates in the jail, *Kocken*, 301 Wis. 2d 266, ¶ 75; (2) hiring and firing procedures of deputy sheriffs, *see Buech*, 171 Wis. at 482; *Heitkemper*, 194 Wis. 2d at 193; (3) day-to-day scheduling of overtime and emergency coverage and limited-term employee coverage other than court officers, *Dunn County*, 293 Wis. 2d 637, ¶ 23; and (4) money-generating transport of federal prisoners in the county's jail under a rental contract with the federal government, *Ozaukee County*, 315 Wis. 2d 102, ¶¶ 32–33.

██

¶ 23. All of the above determined administrative duties have some connection to the sheriff's constitutionally protected duties, but cannot be said to be tasks that lend character and distinction to the office of sheriff. Operating the machines involved in screening is a mundane task that is done in many places by private security officers. These have not traditionally been the sheriff's tasks to perform. They are too far removed from the courtroom itself, the orders of the judges and the function of law enforcement. Because staffing metal detector and x-ray machines is similar to the duties that the courts have considered "mundane and commonplace," "internal management and administrative," *Heitkemper*, 194 Wis. 2d at 193, we reverse the order of the trial court.

*By the Court.*—Order reversed and cause remanded.